# Exhibit B

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

STATE OF RHODE ISLAND                                    SUPERIOR COURT
KENT, SC

NEW ENGLAND PROPERTY           )
SERVICES GROUP, LLC,           )
                               )
              *Petitioner*     )
v.                             )                    C.A. No.:
                               )
SELECTIVE INSURANCE COMPANY    )
OF SOUTH CAROLINA,             )
                               )
              *Respondent*     )

## PETITIONER, NEW ENGLAND PROPERTY SERVICES GROUP LLC'S, PETITION TO APPOINT AN APPRAISAL UMPIRE PURSUANT TO R.I.G.L. § 10-3-4 and R.I.G.L. § 10-3-6 AND R.I.G.L. § 27-5-3

New England Property Services Group, LLC ("NEPSG") and Selective Insurance Company of South Carolina ("SELECTIVE") are in dispute over an insurance claim involving physical injury to a Rhode Island residence caused by storm-related damage. The dispute concerns the appraisal of an insurance claim, wherein ownership of the claim has been transferred to NEPSG via the claim assignment provision in a home improvement contract. In *New England Property Services Group, LLC v. NGM Insurance Company*, 329 A.3d 889, (R.I. 2025), the Supreme Court of Rhode Island held that appraisal is a form of arbitration and is governed by the rules of the Arbitration Act, consequently the provisions of R.I.G.L. § 10-3-1, et seq. apply to appraisals proceedings. NEPSG is the lawful assignee claimant pursuant to the Superior Court ruling in *New Eng. Prop. Servs. Grp. v. USAA Cas. Ins. Co.*, C. A. PC-2023-00130, at *10 (R.I. Super. July 28, 2023) "[W]hen Policyholders assigned their interests in the claim to Plaintiff, Plaintiff became the 'equitable owner' of the Claim and therefore, had the same rights under the Policy to pursue recovery for the Claim as the Policyholders did prior to assignment."

1

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

As NEPSG and SELECTIVE disagreed over the amount of loss involved in the claim, NEPSG underlying insurance policy's ("Policy") appraisal ("arbitration") process to determine the amount of loss, with NEPSG appointing Ed Ladouceur as its appraiser. <u>SELECTIVE was required to name an appraiser within twenty (20) days under the appraisal clause of the Policy and R.I.G.L. § 27-5-3</u>. SELECTIVE refused to appoint an appraiser ("arbitrator") despite numerous good faith requests by NEPSG, entirely rejecting the arbitration process. At the time of this filing, forty-seven (47) days have elapsed since NEPSG's written demand for arbitration, with SELECTIVE continuing to refuse to appoint an appraiser. Due to SELECTIVE's refusal to engage in the arbitration process as required by the Policy and R.I.G.L. § 27-5-3, NEPSG has been compelled to institute this litigation. Pursuant to the authority under R.I.G.L. § 10-3-4, NEPSG respectfully requests this Honorable Court to order SELECTIVE to proceed forward in the arbitration process, in accordance with the Policy and R.I.G.L. § 27-5-3. NEPSG further requests this Honorable Court to designate and appoint SELECTIVE's arbitrator, pursuant to its authority under R.I.G.L. § 10-3-6, from the list of qualified and impartial arbitrators named herein. NEPSG further requests this Honorable Court, pursuant to the authority granted to it by R.I.G.L. § 10-3-6, to appoint Attorney Robert E. Craven ("Attorney Craven") as the umpire, as he is both qualified and disinterested.

## **PARTIES**

1.      The Petitioner, NEPSG, is a Massachusetts Limited Liability Company that is properly registered to do business in the state of Rhode Island.

2.      The Respondent, SELECTIVE, is an Indiana corporation with principal offices in Indianapolis, Indiana, and is properly registered to do business in the state of Rhode Island.

2

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

## JURISDICTION

3. The Court has jurisdiction to order the appraisal/arbitration of the underlying claim under R.I.G.L. § 10-3-4 which states:

> ***The party aggrieved by the alleged failure, neglect, or refusal of another to perform under a written agreement for arbitration may petition the superior court*** *for the county in which any of the parties reside or has their place of business for an order directing that the arbitration proceed in the manner provided for in the agreement… The court shall hear the parties,* ***and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.***

4. The Court also has jurisdiction to appoint an appraiser/arbitrator pursuant to R.I.G.L. § 10-3-6 which states:

> *If, in the agreement, provision is made for a method of naming or appointing an arbitrator or arbitrators or an umpire, the method shall be followed; but if no method is provided in the agreement,* ***or if a method is provided and any party thereto shall fail to avail himself or herself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or an umpire, or in filling a vacancy****, then, upon the application of either party to the controversy,* ***the court, as described in § 10-3-4, shall designate and appoint an arbitrator or arbitrators or umpire****, as the case may require, who shall act under the agreement with the same force and effect as if he, she, or they had been specifically named in the agreement; and, unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator.*

5. Further, the Court has jurisdiction to appoint an umpire pursuant to the relevant appraisal provisions in the underlying homeowners insurance policy's appraisal clause which states in pertinent part:

> *If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event****, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other****. The two appraisers will choose an umpire.* ***If they cannot agree upon an umpire within 15 days, you or we may request that the choice be***

3

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:25-cv-00204-MRD-PAS     Document 1-2     Filed 05/09/25     Page 5 of 108 PageID #: 12

*made by a judge of a court of record in the state where the "residence premises" is located…*

6.     Additionally, the Court has jurisdiction to appoint an umpire pursuant to the relevant appraisal provision as detailed in R.I.G.L. § 27-5-3 which states:

> *Appraisal*
>
> *In case the insured and this company shall fail to agree as to the actual cash value or the of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and **notify the other of the appraiser selected within twenty (20) days of the demand**. The appraisers shall first select a competent and disinterested umpire; **and failing for fifteen (15) days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located**. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and failing to agree, shall submit their differences, only to the Umpire. An award in writing, so itemized of any two (2) when files with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and the Umpire shall be paid by the parties equally.* (Emphasis Added).

## GENERAL ALLEGATIONS

7.     SELECTIVE issued homeowners policy number H 2244717 ("Policy") to Michael and Kate Resnick ("Policyholders"), who timely paid a premium for the Policy. See *Exhibit 1 – Policy of Insurance*.

8.     The Policy insures the Policyholders' interest in their home located at 548 Buttonwoods Avenue, Warwick, RI ("Subject Premises").

9.     At all times relevant to the present claim, the Policy was insuring the Policyholders' interest in the Subject Premises.

10.    On or about October 29, 2017, the Subject Premises sustained physical injury to the roof, siding, and interior of the main dwelling. Further, the roof of the property's shed was likewise damaged.

4

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

11.    Upon information and belief, on or about October 29, 2017, the Policyholders filed a claim with SELECTIVE, which was accepted sometime between October 31, 2017, and November 30, 2017, and assigned claim number 21798287 ("Claim"), with a date of loss of October 29, 2017, and water being determined as the cause of loss.

12.    On or about February 22, 2025, Mr. Steven Ceceri ("Mr. Ceceri"), the sole owner and operator of NEPSG, conducted an inspection of the Subject Premises, discovering and photographing numerous instances of damage.

13.    On or about February 22, 2025, the Policyholders and NEPSG executed a Home Improvement Contract, which included an irrevocable assignment of insurance claim benefits and rights and a direction to pay ("Contract"). Pursuant to the Contract, the Policyholder assigned all rights and benefits in the Claim to NEPSG as the assignee. See *Exhibit 2 – Contract.*

14.    On or about February 24, 2025, NEPSG contacted the Defendant to inform them that it has become the legal assignee of the Claim. NEPSG provided the Defendant with a copy of the Contract and a written demand for appraisal ("Demand") pursuant to the appraisal section of R.I.G.L. § 27-5-3, as NEPSG disagreed with their previous estimates of loss. See *Exhibit 3 – Demand for Appraisal.*

15.    On or about March 4, 2025, SELECTIVE sent a letter to NEPSG rejecting the demand for appraisal. See *Exhibit 4 – Appraisal Rejection.*

16.    On or about March 4, 2025, the Plaintiff emailed SELECTIVE inquiring about the statute of limitations for filing a suit based on water damage. See *Exhibit 5 – Statute of limitations Inquiry.*

5

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

17.     On or about March 6, 2025, SELECTIVE responded that the statute of limitations in Rhode Island is ten (10) years. See *Exhibit 5*.

## REQUEST FOR RELIEF

WHEREFORE, pursuant to the authority granted under R.I.G.L. § 10-3-4, NEPSG hereby respectfully requests that this Honorable Court order SELECTIVE to proceed with arbitration as required by the Policy and R.I.G.L. § 27-5-3. Further, with the Respondent having failed to name an arbitrator, NEPSG further requests this Honorable Court to appoint SELECTIVE's arbitrator from the following list of qualified and impartial individuals from the Superior Court List of Arbitrators dated September 19, 2024, as listed below:

1.  David M. Spinella, Esq.
    David M. Spinella Attorney & Counselor at Law
    235 Promenade Street
    Providence, RI 02908

2.  Thomas A. Madden, Esq.
    Thomas A. Madden Law, LLC
    1383 Warwick Avenue
    Warwick, RI 02888

3.  William M. Walsh, Esq.
    William M. Walsh, Attorney at Law
    66 Superior View Boulevard
    North Providence, RI 02911

Finally, NEPSG respectfully requests this Honorable Court, pursuant to its authority under R.I.G.L. § 10-3-6, and 27-5-3, to appoint Attorney Craven as the umpire to ensure a resolution of the claim in a "speedy and efficient manner" (See *Hahn v. Allstate Ins. Co.*, 15 A.3d 1026 (R.I. 2011)). Attorney Craven is also listed on the Superior Court List of Arbitrators, dated September 19, 2024.

Respectfully submitted,
New England Property Services Group, LLC

6

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

By its attorney,

/s/ Nicholas G. Elias
Nicholas G. Elias #10775
New England Property Services Group, LLC
1822 North Main Street
Second Floor Annex Suite 001
Fall River, MA 02720
(508) 567-5738 – Phone
(401) 556-4423 – Fax
Nicholas@newenglandpropertyservicesgroup.com

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# EXHIBIT 1

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:25-cv-00204-MRD-PAS     Document 1-2     Filed 05/09/25     Page 10 of 108 PageID #: 17

# CERTIFICATE OF UNDERWRITING

I, SHELLY GALLAGHER, HEREBY CERTIFY THAT I AM A VICE-PRESIDENT OF SELECTIVE INSURANCE COMPANY OF AMERICA AND MANAGER OF PERSONAL LINES UNDERWRITING OPERATIONS.

I FURTHER CERTIFY THAT THE ATTACHED SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA  HOMEOWNERS POLICY H2244717, EFFECTIVE FEBRUARY 10, 2017 TO FEBRUARY 10, 2018 IN THE NAME OF MICHAEL RESNICK, IS A TRUE COPY OF THE ORIGINAL HOMEOWNERS  POLICY H2244717 EFFECTIVE FEBRUARY 10, 2017 TO FEBRUARY 10, 2018.

**IN WITNESS WHEREOF**, I HAVE SIGNED THIS DOCUMENT THIS MARCH 26, 2025.

_____

SHELLY GALLAGHER
VICE-PRESIDENT, PL Underwriting

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 3:30 PM
Envelope: 5082546
Reviewer: Lindsay Z.

# HOMEOWNERS CONTINUOUS RENEWAL CERTIFICATE

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA
3426 TORINGDON WAY STE 200
CHARLOTTE, N.C. 28277

**Named Insured and Mailing Address**
MICHAEL RESNICK
KATE RESNICK
548 BUTTONWOODS AVE
WARWICK, RI 02886--8141

| POLICY DATA | | POLICY DATA |
|---|---|---|
| **Number** | H 2244717 | |
| **Term** | 03A RI | |
| **Agent No.** | 00-38002-00000 | |
| **Period** | 02/10/2017 to 02/10/2018 | |

02/10/2017 to 02/10/2018
**12:01 A.M. Standard Time
At The Residence Premises**

AGENT:                                        BILL ACCT. NO.:  676580423
JOHN ANDRADE INS AGCY INC
PO BOX 8
BRISTOL, RI 02809--0008                        401-253-6542


THE RESIDENCE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS
UNLESS OTHERWISE STATED BELOW.
_____
              COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT
              OF LIABILITY IS SHOWN FOR THE COVERAGE.
_____
SECTION I COVERAGES     LIMIT OF LIABILITY                          PREMIUM
  A. DWELLING          $   270,500
  B. OTHER STRUCTURES  $    27,050
  C. PERSONAL PROPERTY $   202,900
  D. LOSS OF USE       $ SEE BELOW

                              SECTION I PREMIUM          $ 1,192.00

SECTION II COVERAGES AND LIMITS OF LIABILITY
  E. PERSONAL LIABILITY            $   500,000 EACH OCCURRENCE     INCLUDED
  F. MEDICAL PAYMENTS TO OTHERS    $     5,000 EACH PERSON         INCLUDED

  SCHEDULED PERSONAL PROPERTY   (SEE "REMARKS" SECTION FOR DETAILS) $    53.00

                              TOTAL COMBINED PREMIUM  $ 1,245.00
_____
SECTION I - DEDUCTIBLES (INCLUDED IN SECTION I PREMIUM)

   $ 1000 ALL PERILS
    2% HURRICANE DEDUCTIBLE APPLIES.
    HO 03 57, HURRICANE PERCENTAGE DEDUCTIBLE, IS ATTACHED
MISC -1832, COMMON LOSS DEDUCTIBLE                              APPLIES

IN CASE OF LOSS UNDER SECTION I, WE COVER ONLY THAT PART OF THE LOSS OVER THE
DEDUCTIBLE(S) STATED.
_____
FORM AND ENDORSEMENTS MADE PART OF YOUR POLICY:
(NUMBER(S) AND EDITION DATE(S) ARE PROVIDED BELOW.)

FORM: HO 00 03  10 00
ENDORSEMENT(S):   IN0197    (08-07)    IN0303    (01-13)    MISC-798  (06-01)
                  MISC1597 (10-06)    MISC1600 (05-00)    MISC1841 (07-15)
                  HO 01 38  03 12     HO 04 96  10 00     F-1148    (09-02)
                  F-1201   (11-07)    F-1212   (01-13)    MISC1832 (12-15)
                  M1810D   (08-13)    HO 04 53  10 00     HO 04 27  04 02
                  HO 03 57  12 12     HO 24 82  04 02     HO 04 90  10 00
                  HO 04 60  10 00     F-1305   (03-13)    F-1217   (08-11)
_____
MORTGAGEE(S):
   1. SANTANDER BANK, N.A.

      ISAOA ATIMA  P.O. BOX 628
      AMELIA, OH  45102                        LOAN NO. 3786206899

_____
                    RENEWAL POLICY CHANGES
THIS POLICY HAS BEEN AMENDED, UPON RENEWAL, AS FOLLOWS:

                    IMPORTANT NOTICE
***THIS RENEWAL REFLECTS A CHANGE IN RATES


**Issuing Date** 12/06/2016          **Date** _____     **Authorized REPRESENTATIVE** ____--NOT REQUIRED--

D/B-01- I
F-697 (11/07)                        **INSURED'S COPY**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 3:30 PM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:25-cv-00204-MRD-PAS    Document 1-2    Filed 05/09/25    Page 12 of 108 PageID #: 19

# HOMEOWNERS CONTINUOUS RENEWAL CERTIFICATE

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA
3426 TORINGDON WAY STE 200
CHARLOTTE, N.C. 28277

**Named Insured and Mailing Address**
MICHAEL RESNICK
KATE RESNICK
548 BUTTONWOODS AVE
WARWICK, RI 02886--8141

POLICY DATA

| | |
|---|---|
| **Number** | H  2244717 |
| **Term** | 03A      RI |
| **Agent No.** | 00-38002-00000 |
| **Period** | 02/10/2017 to 02/10/2018 |

12:01 A.M. Standard Time
At The Residence Premises

---

                                                    PAGE  2
AMENDED:   COVERAGES (A AND/OR C) PROPERTY VALUES WERE INCREASED FOR YOUR
           LOCATION AND WERE CALCULATED USING A FACTOR OF 1.020
AMENDED: PROTECTION CLASS

_____
                              -REMARKS-
THIS POLICY DOES NOT PROVIDE WORKERS COMPENSATION INSURANCE FOR RESIDENCE
EMPLOYEES OR FOR ANY OTHER EMPLOYEES.

THE FOLLOWING ITEMS ARE INCLUDED IN YOUR SECTION I PREMIUM UNLESS OTHERWISE
STATED.

HOME/AUTO ACCOUNTS WITH SELECTIVE APPLIES.
LOSS FREE DISCOUNT APPLIES.
GOOD PAYER APPLIES.
INCREASE IN COVERAGE C, PERSONAL PROPERTY, APPLIES.                INCLUDED
COVERAGE D-LOSS OF USE IS COVERAGE FOR THE ACTUAL LOSS SUSTAINED
   FOR A PERIOD OF 12 MONTHS IMMEDIATELY FOLLOWING THE DATE OF LOSS,
   SUBJECT TO THE POLICY PROVISIONS.
INCREASE IN COVERAGE E, PERSONAL LIABILITY APPLIES.               INCLUDED
WOODSTOVE, COAL OR SOLID FUEL, DOES NOT APPLY.
SWIMMING POOL, DOES NOT APPLY.
TRAMPOLINE, DOES NOT APPLY.
# OF HOUSEHOLD OCCUPANTS     2                                    INCLUDED
HO 04 27, LIMITED FUNGI, WET OR DRY ROT OR BACTERIA COVERAGE,     INCLUDED
   IS ATTACHED.
   PROPERTY COVERAGE LIMIT                    10000
   COVERAGE AGGREGATE LIABILITY SUB-LIMIT     50000
HO 04 53, CREDIT CARD, FUND TRANSFER CARD OR ACCESS DEVICE,
   FORGERY AND COUNTERFEIT MONEY COVERAGE - INCREASED LIMIT,
   IS ATTACHED.
   INCREASED LIMIT OF LIABILITY: $ 5,000                         INCLUDED
HO 24 82, PERSONAL INJURY, IS ATTACHED.                          INCLUDED
HO 04 90, PERSONAL PROPERTY REPLACEMENT COST, IS ATTACHED.        INCLUDED
HO 04 60, SCHEDULED PERSONAL PROPERTY (WITH AGREED  VALUE LOSS SETTLEMENT),
   IS ATTACHED.
   CLASS OF                                   AMOUNT OF
   PERSONAL PROPERTY                          INSURANCE
     JEWELRY                                $      9,150 $     53.00

   ARTICLE(S) AND                             AMOUNT OF
   DESCRIPTION(S)                             INSURANCE

   JEWELRY
   1.  diamond engagement ring               $      9,150
F-1305, WATER BACKUP AND SUMP OVERFLOW IS ATTACHED.              INCLUDED
   LIMIT OF LIABILITY IS $  5,000. A DEDUCTIBLE OF $1000.00 APPLIES.
F-1217 SUMMIT CLASSIC HOMEOWNERS ENDORSEMENT, IS ATTACHED.       INCLUDED
_____
LIVING AREA SQUARE FOOTAGE - 1435
ROOF AGE - YEAR OF ROOF 2010
ROOF TYPE - SHINGLE, ASPHALT/FIBERGLASS
NO PART OF THE HOME HAS A FLAT ROOF - YES
HEATING AGE - YEAR OF HEATING 2010
PRIMARY INTERIOR HEAT SOURCE - NATURAL GAS FORCED AIR
ENTIRE PLUMBING SYSTEM HAS BEEN UPDATED TO PVC, COPPER OR FLEXIBLE PVC - YES
ENTIRE ELECTRIC SYSTEM IS EITHER A MINIMUM 100 AMP SERVICE
OR CIRCUIT BREAKERS - YES
DOGS ON THE PREMISES - NONE
PLEASE CONTACT YOUR INSURANCE AGENT IF THIS INFORMATION IS NOT CORRECT.
_____
                    CONTINUOUS RENEWAL PLAN

D/B-01- I
F-697 (11/07)                          INSURED'S COPY

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 3:30 PM
Envelope: 5082546
Reviewer: Lindsay Z.

# HOMEOWNERS CONTINUOUS RENEWAL CERTIFICATE

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA
3426 TORINGDON WAY STE 200
CHARLOTTE, N.C. 28277

**Named Insured and Mailing Address**
MICHAEL RESNICK
KATE RESNICK
548 BUTTONWOODS AVE
WARWICK, RI 02886--8141

**P O L I C Y D A T A**

**Number** H 2244717

**Term** 03A RI

**Agent No.** 00-38002-00000

**Period**
02/10/2017 to 02/10/2018
**12:01 A.M. Standard Time**
**At The Residence Premises**

PAGE 3

1. THE POLICY PERIOD SHALL BE AS INDICATED AND FOR SUCCESSIVE POLICY TERMS AS STATED BELOW.
2. IF WE ELECT TO CONTINUE THIS INSURANCE, WE WILL RENEW THIS POLICY IF YOU PAY THE REQUIRED RENEWAL PREMIUM WHEN DUE FOR EACH SUCCESSIVE POLICY PERIOD, SUBJECT TO OUR PREMIUMS, RULES AND FORMS THEN IN EFFECT.
3. IF A MORTGAGEE IS NAMED IN THIS POLICY, WE WILL CONTINUE THIS INSURANCE FOR THE MORTGAGEE'S INTEREST FOR TEN DAYS AFTER WRITTEN NOTICE OF TERMINATION TO THE MORTGAGEE AND THEN THIS POLICY WILL TERMINATE.

_____ RISK LOCATION RATING INFORMATION _____
YOU RESIDE IN A ONE-FAMILY SIDING, WOOD CONSTRUCTED LOCATED WITHIN 1000 FEET OF A FIRE HYDRANT AND WITHIN 2 MILES OF A FIRE STATION.  ITS YEAR OF CONSTRUCTION IS 1955.  THE DWELLING IS YOUR PRIMARY RESIDENCE.  YOUR FIRE DISTRICT IS WARWICK.

THE ZIP CODE USED FOR THE PURPOSE OF RATING THIS POLICY IS 02886, THE COUNTY IS KENT, AND THE PROTECTION CLASS IS 02 , AND THE CITY/COUNTY CODE IS 0430-020, AND THE BUILDING CODE EFFECTIVENESS GRADING CODE IS 99.

(A) THE RESIDENCE PREMISES IS NOT SEASONAL; (B) NO BUSINESS PURSUITS ARE CONDUCTED ON THE RESIDENCE PREMISES; (C) THE RESIDENCE PREMISES IS THE ONLY PREMISES WHERE YOU MAINTAIN A RESIDENCE OTHER THAN BUSINESS OR FARM PROPERTIES; (D) THE INSURED HAS NO FULL TIME RESIDENCE EMPLOYEES; (E) THE INSURED HAS NO OUTBOARD MOTOR(S) OR WATERCRAFT OTHERWISE EXCLUDED UNDER THIS POLICY FOR WHICH COVERAGE IS DESIRED.

EXCEPTIONS, IF ANY TO (A), (B), (C), (D), OR (E):  NONE

WE HAVE THE RIGHT, BUT ARE NOT OBLIGATED, TO INSPECT YOUR PROPERTY. THIS INSPECTION MAY BE MADE BY US OR MAY BE MADE ON OUR BEHALF.  AN INSPECTION OR ITS RESULTING ADVICE, REQUIREMENTS OR REPORT DOES NOT WARRANT THAT YOUR PROPERTY IS SAFE, HEALTHFUL, OR IN COMPLIANCE WITH THE LAWS, RULES OR REGULATIONS. INSPECTIONS OR REPORTS, WHICH MAY INCLUDE PHOTOGRAPHS OF THE PROPERTY, ARE FOR INSURANCE PURPOSES ONLY.

WE MAY REVIEW YOUR CREDIT REPORT TO OBTAIN OR USE AN INSURANCE SCORE BASED ON THE INFORMATION CONTAINED IN THE CREDIT REPORT. WE MAY USE A THIRD PARTY  IN CONNECTION WITH THE DEVELOPMENT OF YOUR INSURANCE SCORE. INSURANCE SCORES ARE CONFIDENTIAL RANKINGS  BASED ON  CREDIT HISTORY  INFORMATION. THIS  INCLUDES WHETHER YOU'VE MADE TIMELY PAYMENTS, THE NUMBER OF OPEN CREDIT CARD ACCOUNTS, AND WHETHER YOU'VE FILED FOR BANKRUPTCY. SPECIFIC INFORMATION CONTAINED IN YOUR CREDIT REPORT REMAINS PRIVATE INFORMATION, AND INSURANCE SCORES DO NOT INCLUDE INFORMATION ABOUT INCOME OR RACE. YOUR PREMIUM MAY HAVE BEEN CHANGED BECAUSE OF YOUR INSURANCE SCORE. IF YOU HAVE BEEN CHARGED AN ADDITIONAL PREMIUM YOU WILL RECEIVE A SEPARATE LETTER IN ACCORDANCE WITH THE REQUIREMENTS OF THE FAIR CREDIT REPORTING ACT.

YOU MAY REQUEST RECONSIDERATION OF AN INSURANCE SCORE PREMIUM INCREASE BECAUSE OF THE DIRECT INFLUENCE OF AN EXTRAORDINARY LIFE EVENT ON YOUR CREDIT INFORMATION. AN EXTRAORDINARY LIFE EVENT MAY INCLUDE, BUT IS NOT LIMITED TO: A CATASTROPHIC EVENT, AS DECLARED BY THE FEDERAL OR A STATE GOVERNMENT; SERIOUS OR CATASTROPHIC ILLNESS OR INJURY TO AN APPLICANT, AN INSURED OR AN IMMEDIATE FAMILY MEMBER OF AN APPLICANT OR INSURED; DEATH OF AN IMMEDIATE FAMILY MEMBER OF AN APPLICANT OR INSURED OR MEMBER OF THE SAME HOUSEHOLD; TEMPORARY LOSS OF EMPLOYMENT OF AN APPLICANT OR INSURED; DIVORCE; DISSOLUTION OF A MARRIAGE OR INVOLUNTARY INTERRUPTION OF LEGALLY OWED ALIMONY OR SUPPORT PAYMENTS OF AN APPLICANT OR INSURED; IDENTITY THEFT OF AN APPLICANT OR INSURED; MILITARY DEPLOYMENT OF AN APPLICANT OR INSURED; BEING A VICTIM OF DOMESTIC ABUSE; OR OTHER EVENTS AS DETERMINED BY THE INSURER. A WRITTEN REQUEST WITH PERTINENT DOCUMENTATION AND DETAIL SHOULD BE SENT FOR REVIEW TO THE COMPANY AT:

D/B-01- I
F-697 (11/07)

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 3:04 PM
Envelope: 5082546
Reviewer: Lindsay Z.

# HOMEOWNERS CONTINUOUS RENEWAL CERTIFICATE

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA
3426 TORINGDON WAY STE 200
CHARLOTTE, N.C. 28277

**Named Insured and Mailing Address**
MICHAEL RESNICK
KATE RESNICK
548 BUTTONWOODS AVE
WARWICK,  RI  02886--8141

| | POLICY DATA | |
|---|---|---|
| Number | H  2244717 | |
| Term | 03A        RI | |
| Agent No. | 00-38002-00000 | |
| Period | | |
| | 02/10/2017 to 02/10/2018 | |

**12:01 A.M. Standard Time**
**At The Residence Premises**

PAGE  4

SELECTIVE INSURANCE
PERSONAL LINES UNDERWRITING
40 WANTAGE AVE
BRANCHVILLE, NJ 07890

YOU MAY REQUEST A NEW INSURANCE SCORE REPORT BE ORDERED EACH YEAR, BUT NOT MORE
THAN ONCE IN A 24 MONTH PERIOD. THE NEW REPORT IS USED FOR RATEMAKING SUBJECT TO
APPLICABLE STATE RESTRICTIONS.

D/B-01- I

F-697 (11/07)                                              **INSURED'S COPY**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# HOMEOWNERS 3 — SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in the care of any person named above;

---

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II**, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**11.** "Residence premises" means:

    **a.** The one family dwelling where you reside;

    **b.** The two, three or four family dwelling where you reside in at least one of the family units; or

    **c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section **I** that exceeds the deductible amount shown in the Declarations.

## SECTION I — PROPERTY COVERAGES

**A. Coverage A — Dwelling**

  **1.** We cover:

    **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

    **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

  **2.** We do not cover land, including land on which the dwelling is located.

**B. Coverage B — Other Structures**

  **1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

  **2.** We do not cover:

    **a.** Land, including land on which the other structures are located;

    **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

    **c.** Other structures from which any "business" is conducted; or

    **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

  **3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

**C. Coverage C — Personal Property**

  **1. Covered Property**

    We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

  **2. Limit For Property At Other Residences**

    Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

    **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

  **3. Special Limits Of Liability**

    The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

    **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

4. **Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** — Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** — Property Coverages; or

**k.** Water or steam.

**D. Coverage D — Loss Of Use**

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2. Fair Rental Value**

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

**4. Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

**1. Debris Removal**

**a.** We will pay your reasonable expense for the removal of:

**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

**(3)** Damage(s) a covered structure; or

**(4)** Does not damage a covered structure, but:

**(a)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I** — Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

   **a.** We will pay up to $500 for:

     **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

     **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

     **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

     **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   This coverage is additional insurance. No deductible applies to this coverage.

   **b.** We do not cover:

     **(1)** Use of a credit card, electronic fund transfer card or access device:

       **(a)** By a resident of your household;

       **(b)** By a person who has been entrusted with either type of card or access device; or

       **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

     **(2)** Loss arising out of "business" use or dishonesty of an "insured".

   **c.** If the coverage in **a.** above applies, the following defense provisions also apply:

     **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

     **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

     **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

   **a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

     **(1)** Earthquake; or

     **(2)** Land shock waves or tremors before, during or after a volcanic eruption.

   The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

   **b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

   **c.** Paragraph **P.** Policy Period under Section **I** — Conditions does not apply to this coverage.

   This coverage is additional insurance.

**8. Collapse**

   **a.** With respect to this Additional Coverage:

     **(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C;**

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

## 11. Ordinance Or Law

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

## 12. Grave Markers

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I — PERILS INSURED AGAINST

## A. Coverage A — Dwelling And Coverage B — Other Structures

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B.**

**2.** We do not insure, however, for loss:

**a.** Excluded under Section **I** — Exclusions;

**b.** Involving collapse, except as provided in **E.8.** Collapse under Section **I** — Property Coverages; or

**c.** Caused by:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, vermin, rodents, or insects; or

**(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** — Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C — Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** — Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**b.** This peril does not include loss:

**(1)** To the system or appliance from which the water or steam escaped;

**(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

**(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section **I** — Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

## SECTION I — EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** — Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** — Conditions.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I — CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** — Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

**a.** Make reasonable and necessary repairs to protect the property; and

**b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

**a.** Show the damaged property;

**b.** Provide us with records and documents we request and permit us to make copies; and

**c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

8.  Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    a.  The time and cause of loss;

    b.  The interests of all "insureds" and all others in the property involved and all liens on the property;

    c.  Other insurance which may cover the loss;

    d.  Changes in title or occupancy of the property during the term of the policy;

    e.  Specifications of damaged buildings and detailed repair estimates;

    f.  The inventory of damaged personal property described in **6.** above;

    g.  Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    h.  Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** — Property Coverages, stating the amount and cause of loss.

**C.  Loss Settlement**

In this Condition **C.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** — Property Coverages. Covered property losses are settled as follows:

1.  Property of the following types:

    a.  Personal property;

    b.  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    c.  Structures that are not buildings; and

    d.  Grave markers, including mausoleums;

    at actual cash value at the time of loss but not more than the amount required to repair or replace.

2.  Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

    a.  If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

        (1) The limit of liability under this policy that applies to the building;

        (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        (3) The necessary amount actually spent to repair or replace the damaged building.

        If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

    b.  If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

        (1) The actual cash value of that part of the building damaged; or

        (2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

    c.  To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

        (1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 00 03 10 00**

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** — Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**SECTION II — LIABILITY COVERAGES**

**A. Coverage E — Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F — Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured".

**SECTION II — EXCLUSIONS**

**A. "Motor Vehicle Liability"**

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

a. Is registered for use on public roads or property;

b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

c. Is being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used to carry persons or cargo for a charge; or

(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

a. In dead storage on an "insured location";

b. Used solely to service an "insured's" residence;

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.;** or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B.** **"Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E — Personal Liability And Coverage F — Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

HO 00 03 10 00

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E — Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

  **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** — Additional Coverages;

  **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

    **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

    **(2)** Where the liability of others is assumed by you prior to an "occurrence";

    unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

  **a.** Workers' compensation law;

  **b.** Non-occupational disability law; or

  **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

  **a.** Is also an insured under a nuclear energy liability policy issued by the:

    **(1)** Nuclear Energy Liability Insurance Association;

    **(2)** Mutual Atomic Energy Liability Underwriters;

    **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

  **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

  This exclusion also applies to any claim made or suit brought against you or an "insured":

  **a.** To repay; or

  **b.** Share damages with;

  another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F — Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

  **a.** Occurs off the "insured location"; and

  **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II — ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

    **a.** To the extent of any amount recoverable under Section **I**;

    **b.** Caused intentionally by an "insured" who is 13 years of age or older;

    **c.** To property owned by an "insured";

    **d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

    **e.** Arising out of:

        **(1)** A "business" engaged in by an "insured";

        **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

        **(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

        This exclusion **e.(3)** does not apply to a "motor vehicle" that:

            **(a)** Is designed for recreational use off public roads;

            **(b)** Is not owned by an "insured"; and

            **(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

### D. Loss Assessment

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    **a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II** — Exclusions; or

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

   **(1)** Is elected by the members of a corporation or association of property owners; and

   **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section **II** — Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II — CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

   **a.** The identity of the policy and the "named insured" shown in the Declarations;

   **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

   **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   **c.** With the conduct of suits and attend hearings and trials; and

   **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** — Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**D. Duties Of An Injured Person — Coverage F — Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim — Coverage F — Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**SECTIONS I AND II — CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 00 03 10 00**

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

  **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

  **(2)** If the risk has changed substantially since the policy was issued.

  This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** — Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

  **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

  **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# IMPORTANT NOTICE REGARDING AGENT COMPENSATION

We sell our insurance products and services through appointed independent insurance agencies and agents ("Agent" or "Agents"). Because Agents also generally represent several of our competitors, our primary marketing strategy is to:

- Develop close relationships with each Agent by (i) soliciting their feedback on products and services, (ii) advising them concerning company developments, and (iii) investing significant time with them professionally and socially; and

- Develop with each Agent, and then carefully monitor, annual goals regarding (i) types and mix of risks placed with us, (ii) amounts of premium or numbers of policies placed with us, (iii) customer service levels, and (iv) profitability of business placed with us.

We pay Agents commissions and other consideration for business placed with us (and we do not authorize our Agents to receive other monies for our insurance). We seek to compensate our Agents fairly and in a way consistent with market practices.

Our Agent compensation programs may include one or more of the following depending on the Agent's overall business relationship with us:

- **Commission Payments.** We pay commission based on a percentage of the premium the policyholder pays. The amount of commission varies depending on policy type, state location of risk, and other factors.

- **Additional Commission Payments.** We may pay additional and varying percentages of premium for attainment of certain goals we set with the Agent, including:

    o **Profitability,** which we determine by comparing losses and expenses to premium;

    o **Volume,** which is the amount of premium written with us;

    o **Growth and Retention,** which we measure by comparing premium volume or number of policies for overall or specific types of policies; or

    o **Annual Plan Performance,** which we measure according to performance standards determined by us and the Agent.

    In certain cases, an Agent may put additional commissions at risk and become obligated to pay us amounts if certain goals are not met.

- **Expense Reimbursement.** We may reimburse certain marketing and other expenses incurred for placing business with us.

- **Entertainment and Other Things of Value.** We may entertain or provide other things of value, including travel and gratuities, to Agents who we believe provide exceptional value to our policyholders and shareholders.

- **Business Production Incentive Programs.** We may provide Agents or their employees opportunities to receive additional compensation (cash or contest prizes) for certain activities or tasks, such as placing specific types of policies with us or inputting data through one of our technology systems.

**IN 01 97 08 07**
**Page 1 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

- **Loss Control Agreements.** We may pay Agents a flat fee or a percentage of commission for safety and loss control surveys, inspections, accident or claim investigations.

- **Agent Stock Purchase Plan.** Certain of our Agents participate in a stock purchase plan that allows those Agents to purchase common stock in Selective Insurance Group, Inc. at a 10% discount to market and requires those agents to hold the stock for at least one year before they can transfer it.

As supporters of the independent insurance agency distribution system, we may provide Agents from time-to-time with tools and programs designed to preserve and strengthen the independent agency distribution system, including assistance with producer recruitment and/or training, loans, or loan guarantees. These tools and programs, which may be experimental, are provided to assist our Agents in the perpetuation of robust independent insurance agencies and are not conditioned on the imposition of extraordinary current or future production conditions.

We also distribute our insurance products to a limited extent through select insurance brokers which we compensate with some of the same compensation tools we use for Agents. If you have engaged a broker to place insurance with us, please ask the broker if any of the above described compensation arrangements are in effect with us.

Please direct questions regarding specific compensation to your Agent.

**IN 01 97 08 07**
**Page 2 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

We will provide the insurance described in this policy in return for the premium

and compliance with all applicable provisions of this policy

Secretary                                      Chairman

**Misc-1597 (10/06)**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# SPECIAL PROVISIONS — RHODE ISLAND

**HO 01 38 03 12**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### DEFINITIONS

Paragraph **A.** is replaced by the following:

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

   **1.** The spouse; or

   **2.** A party who, with the "named insured", has entered into a civil union recognized under Rhode Island law;

   if a resident of the same household.

   "We", "us" and "our" refer to the Company providing this insurance.

### SECTION I — CONDITIONS

Paragraph **H. Suit Against Us** is replaced by the following:

**H. Suit Against Us**

   No action can be brought on this policy for the recovery of any claim for direct loss or damage by fire or lightning, unless the policy provisions have been complied with and the action is started within two years after the date of loss.

Paragraph **J. Loss Payment** is replaced by the following:

**J. Loss Payment**

   We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

   **1.** Reach an agreement with you;

   **2.** There is an entry of a final judgment; or

   **3.** There is a filing of an appraisal award with us.

**L. Mortgage Clause**

   Paragraph **1.** is replaced by the following:

   **1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** equal to or in excess of $3,500 will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

   If a loss payable under Coverage **A** or **B** is less than $3,500, and for which the mortgagee is otherwise entitled to payment, such payment will be paid in full to you, unless no liability exists to the mortgagor.

   (This condition does not apply to Form **HO 00 04.**)

The following condition is added:

**T. Vacancy**

   We shall not be liable for loss caused by fire or lightning occurring while a described building is vacant, whether intended for occupancy by owner or tenant beyond a period of 30 consecutive days subsequent to the date on which an order is issued by the local building inspector pursuant to 23-27.3-124 of the general laws as amended.

   (This is Condition **S.** in Form **HO 00 04.**)

### SECTION II — LIABILITY COVERAGES

**A. Coverage E — Personal Liability**

   Paragraph **1.** is replaced by the following in all forms and Endorsements **HO 24 73** and **HO 24 82:**

   **1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

   Paragraph **1.** is replaced by the following in Endorsement **HO 24 10:**

   **1.** Pay for the damages for which an "insured" is legally liable, subject to the Aggregate Limit Of Liability, as shown in the Schedule and described in Section **II** — Conditions, **A.** Aggregate Limit Of Liability; and

### SECTION II — ADDITIONAL COVERAGES

**A. Claim Expenses**

   The following paragraph is added:

   **5.** Prejudgment interest as follows:

   **a.** Prejudgment interest awarded against an "insured" on the entire judgment if we reject a written settlement offer by the plaintiff that is equal to or less than the applicable limit of liability in this policy; or

   **b.** If **a.** above does not apply, prejudgment interest awarded against an "insured" on that part of the judgment we pay.

### SECTION II — CONDITIONS

The following condition is added:

**K. Direct Liability Of Insurers**

   We will be directly liable for those sums an "insured" becomes legally obligated to pay as damages to the injured party to which this insurance applies. In the event of that injured party's death, we will be directly liable for those sums an "insured" becomes legally obligated to pay as damages to the party entitled to sue as a result of the injured party's death, and to which this insurance applies.

Copyright, Insurance Services Office, Inc., 2011

**HO 01 38 03 12**

**Page 1 of 3**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

HO 01 38 03 12

## SECTIONS I AND II — CONDITIONS

### C. Cancellation

Paragraphs **1.** and **2.** are replaced by the following:

**1.** You may cancel this policy at any time by returning it to us or by letting us or our agent who issued the policy know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your last address known to us by first-class mail. If notice is mailed, we will maintain proof of mailing of the notice to you by United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

Such notice will also be delivered or mailed to any mortgagee, or any person other than the named insured, named in the policy, at the last address known to us. If mailed, the notice will be sent by first-class mail. If notice is mailed, we will maintain proof of mailing of the notice by United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

However, if any one of the following conditions exists at any building that is covered in this policy, we may cancel this policy by letting you know at least 30 days before the date cancellation takes effect:

**(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**(a)** Seasonal unoccupancy; or

**(b)** Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**(2)** After damage by a covered peril, permanent repairs to the building:

**(a)** Have not started; and

**(b)** Have not been contracted for;

within 60 days of payment of loss.

**(3)** The building has:

**(a)** An outstanding order to vacate;

**(b)** An outstanding demolition order; or

**(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply when you are in a bona fide dispute with a taxing authority regarding payment of such taxes.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 01 38 03 12**

Paragraph **D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you or mailing to you by first-class mail, at your last address known to us, written notice at least 30 days before the expiration date of this policy. If notice is mailed, we will maintain proof of mailing of the notice to you by United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

Such notice will also be delivered or mailed to any mortgagee, or any person other than the named insured, named in the policy, at the last address known to us. If mailed, the notice will be sent by first-class mail. If notice is mailed, we will maintain proof of mailing of the notice by United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

**F. Subrogation**

The following paragraph is added:

When we or our agents recover payment on a loss from a third party through subrogation, we must first pay an "insured" the deductible portion of the casualty loss, less the prorated share of subrogation expenses, and thereafter retain any funds in excess of the deductible portion of the recovery.

Paragraph **G. Death** is replaced by the following:

**G. Death**

If any person named in the Declarations, or:

1. The spouse, if a resident of the same household; or

2. A party who, with the "named insured", has entered into a civil union recognized under Rhode Island law, if a resident of the same household;

dies, the following will apply:

1. We insure the legal representative of the deceased, but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 2011

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HOMEOWNERS INSURANCE
AND
DWELLING PERSONAL LIABILITY INSURANCE
NOTICE TO APPLICANTS AND POLICYHOLDERS OF
LEAD POISONING EXCLUSION**

**F-1201 11 07**

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR DOES THIS NOTICE REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

The policy issued as a result of your application or renewal may exclude liability coverage for bodily injury arising out of lead poisoning that occurs in or on a property that is not in compliance with the Rhode Island Lead Poisoning Prevention Act or the Lead Hazard Mitigation Act ("Lead Act"). When the property insured under this policy is not in compliance with the "Lead Act", no liability coverage is provided for bodily injury arising out of lead poisoning. You should be aware, however, that you may be eligible to purchase such coverage from the Rhode Island Joint Reinsurance Association (RIJRA) by endorsement for a noncompliant property.

Additionally, the exclusion will not apply if and when the property is or becomes compliant with the Lead Act. Should the property subsequently become noncompliant (e.g., your certificate expires or becomes invalid) during the policy period, coverage for lead liability will cease and will only be provided beginning on the date that proper proof of compliance with the Lead Act is presented to Selective.

It is your duty to notify Selective of non-compliance. If Selective charged a premium for lead liability coverage for a compliant property, Selective will return any additional premium paid with regard to the lead liability portion of the policy during the period of non-compliance. During the period of non-compliance, you may be eligible for lead liability coverage through Rhode Island Joint Reinsurance Association. We encourage you to consult your insurance agent to review the options available to you. If you do not have an agent, please contact the Rhode Island Joint Reinsurance Association's Customer Service Department at 800-851-8978.

Notice LPD HO/DL 11 01 05 RI

Includes copyrighted material of ISO Properties, Inc., with its permission, 2007    **F-1201 11 07**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# Insurance Score Notice

Policy Number:
Effective Date:

Thank you for choosing Selective to provide your insurance coverage.

In addition to many factors, Selective uses an insurance score in pricing decisions. Your insurance score is based in part on a credit report obtained from a consumer reporting agency. Based in part upon your insurance score, you are not currently eligible for our most favorable plan or rates. However, you are receiving our lowest rate based on your risk characteristics. Your insurance score is based wholly or partly on a consumer report obtained from the following consumer reporting agency:

LexisNexis Consumer Service Center
PO Box 105108
Atlanta, GA  30348-5108
1-800-456-6004
Reference No.:

You may obtain a free credit score and a copy of the consumer report by contacting the above consumer reporting agency within sixty (60) days of receipt of this notice.

Please be advised that the consumer reporting agency did not make the decisions concerning your pricing and will be unable to provide you with specific reasons for Selective's decision. If, however, you believe the information in the consumer report is incorrect, you have the right to dispute the accuracy and/or completeness of the information in your consumer report directly with the consumer reporting agency shown above.

The following factors from your credit report obtained on                had the most significant influence on your insurance score:

Insurance scores can change over time. The score is developed from a mathematical model that weighs and measures credit information such as payment history, the number of collections, bankruptcies, outstanding debt, length of credit history, types of credit in use and the number of new applications for credit. These factors identify credit management patterns that have proven to correlate with the probability of having a future insurance loss. Paying bills on time, keeping balances low and applying for credit only as needed are all steps that will eventually lead to better insurance scores with the possibility for lower insurance premiums.

**EXTRAORDINARY LIFE EVENT**
You may request reconsideration of an insurance score premium increase because of the direct influence of an extraordinary life event on your credit information. An extraordinary life event may include, but is not limited to: catastrophic event, as declared by the federal or a state government; catastrophic illness or injury; death of a spouse, a party who has entered into a civil union with the "named insured" legally recognized under your state law, child, or parent; temporary loss of employment; divorce; identity theft; military deployment; or being a victim of domestic abuse. A written request with pertinent documentation and detail should be sent for review to the company at:

The insured may request a new insurance score report be ordered each year, but not more than once in a 12 month period (or twice in a 12 month period for those policyholders in Minnesota). The new report is used for ratemaking, subject to applicable state restrictions.  We appreciate the opportunity to serve your insurance needs. Thank you.

**MISC-1810 08 13**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HURRICANE DEDUCTIBLE — RHODE ISLAND**

HO 03 57 12 12

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SCHEDULE

| Hurricane Deductible: |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Definitions**

The following definition is added:

1. "Hurricane" means:

   In the state of Rhode Island, on Block Island, "hurricane" means a weather-related event for which the National Weather Service has issued a hurricane warning for Block Island.

   For the remainder of the state, "hurricane" means a weather-related event for which the National Weather Service has issued a hurricane warning for any location in the state of Rhode Island other than Block Island.

2. "First Hurricane" means:

   The first "hurricane" during a calendar year that causes damage to covered property.

3. "Subsequent Hurricane" means:

   Any "hurricane", other than the "first hurricane", during the same calendar year as the "first hurricane" that causes damage to covered property.

**B. Section I — Conditions**

The following special deductible is added to the policy:

**Calendar Year Hurricane Deductible**

1. Subject to Paragraphs **B.2.** and **B.3.** of this endorsement, the applicable hurricane deductible described in Paragraph **B.4.** of this endorsement is a calendar year deductible and applies to all covered losses caused by one or more "hurricanes" during the same calendar year.

2. With respect to damage to covered property caused by the "first hurricane", we will pay only that part of the total of all loss payable that exceeds the applicable hurricane deductible described in Paragraph **B.4.** of this endorsement.

3. With respect to damage to covered property caused by each "subsequent hurricane", we will pay only that part of the total of all loss payable under Section **I** — Property Coverages that exceeds the greater of:

   a. The remaining dollar amount of the applicable hurricane deductible described in Paragraph **B.4.** of this endorsement for that calendar year; or

   b. The deductible described in Paragraph **B.6.** of this endorsement.

4. The applicable hurricane deductible:

   a. Is either:

      (1) The dollar amount shown in the Schedule as the Hurricane Deductible; or

      (2) If a percentage is shown in the Schedule, the dollar amount is determined by multiplying the Coverage **A** Limit Of Liability shown in the Declarations by the deductible percentage amount shown in the Schedule.

   b. Only applies:

      (1) In Block Island:

         (a) During the period beginning at the time a "hurricane" warning is issued for any part of Block Island by the National Weather Service;

         (b) When a "hurricane" results in hurricane force sustained winds for any part of Block Island, as reported by the National Weather Service; and

         (c) Ending 24 hours following the termination of the last "hurricane" warning for any part of Block Island by the National Weather Service;

Copyright, Insurance Services Office, Inc., 2012

HO 03 57 12 12
**Page 1 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 03 57 12 12**

**(2)** Anywhere in the state of Rhode Island other than Block Island:

**(a)** During the period beginning at the time a "hurricane" warning is issued for any location in the state of Rhode Island, other than Block Island, by the National Weather Service;

**(b)** When a "hurricane" results in hurricane force sustained winds for any location in the state of Rhode Island, other than Block Island, as reported by the National Weather Service; and

**(c)** Ending 24 hours following the termination of the last "hurricane" warning for any location in the state of Rhode Island, other than Block Island, by the National Weather Service.

**5.** Except as provided in Paragraph **B.3.b.** of this endorsement, no other deductible applies to loss caused by "hurricane" during the period described in Paragraph **B.4.b.** of this endorsement.

**6.** Refer to the policy Declarations for the deductible that applies to loss caused by the peril of Windstorm when the applicable hurricane deductible described in Paragraph **B.4.** of this endorsement does not apply.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 2012

**HO 03 57 12 12**
**Page 2 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# SCHEDULED PERSONAL PROPERTY ENDORSEMENT
## (WITH AGREED VALUE LOSS SETTLEMENT)

**HO 04 60 10 00**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SCHEDULE*

| Class Of Personal Property | Amount Of Insurance | Premium |
|---|---|---|
| **1.** **Jewelry,** as scheduled below. | $ | $ |
| **2.** **Furs** and garments trimmed with fur or consisting principally of fur, as scheduled below. | | |
| **3.** **Cameras,** projection machines, films and related articles of equipment, as listed below. | | |
| **4.** **Musical instruments** and related articles of equipment, as listed below. You agree not to perform with these instruments for pay unless specifically provided under this policy. | | |
| **5.** **Silverware,** silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry. | | |
| **6.** **Golfer's equipment** meaning golf clubs, golf clothing and golf equipment. | | |
| **7.a.** **Fine Arts,** as scheduled below. This premium is based on your statement that the property insured is located at the following address: at at | Total Fine Arts Amount $ | |
| **7.b.** For an additional premium, Paragraph **5.b.** under **C.** Perils Insured Against is deleted only for the articles marked with a double asterisk (\*\*) in the schedule below. | Amount of **7.b.** only $ | |
| **8.** **Postage Stamps** | | |
| **9.** **Rare and Current Coins** | | |
| | | |

| Article Or Property | Description | Amount Of Insurance |
|---|---|---|
| | | |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

We cover the classes of personal property which are indicated in the Schedule above by an amount of insurance.

This coverage is subject to the:

**1.** Definitions;

**2.** Section **I** — Conditions; and

**3.** Sections **I** and **II** — Conditions;

in the policy and all provisions of this endorsement.

Any deductible stated in this policy does not apply to this coverage.

Copyright, ISO Properties, Inc., 1999

**HO 04 60 10 00**
**Page 1 of 3**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 04 60 10 00**

**A. Newly Acquired Property — Jewelry, Furs, Cameras And Musical Instruments Only**

1. We cover newly acquired property of a class of property already insured. The lesser of the following limits applies:

   a. 25% of the amount of insurance for that class of property; or

   b. $10,000.

2. When you acquire new property you must:

   a. Report these objects to us within 30 days; and

   b. Pay the additional premium from the date acquired.

**B. Newly Acquired Fine Arts**

When Fine Arts are scheduled, we cover objects of art acquired during the policy period for their actual cash value. However, we will pay no more than 25% of the amount of insurance for fine arts scheduled. For coverage to apply for newly acquired fine arts you must:

1. Report these objects to us within 90 days; and

2. Pay the additional premium from the date acquired.

**C. Perils Insured Against**

We insure against risks of direct loss to property described only if that loss is a physical loss to property; however, we do not insure loss caused by any of the following:

1. Wear and tear, gradual deterioration or inherent vice.

2. Insects or vermin.

3. War, including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

4. Nuclear Hazard, to the extent set forth in the Nuclear Hazard Clause of Section **I** — Conditions.

5. If Fine Arts are covered:

   a. Repairing, restoration or retouching process;

   b. Breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles. We cover loss by breakage if caused by:

      (1) Fire or lightning;

      (2) Explosion, aircraft or collision;

      (3) Windstorm, earthquake or flood;

      (4) Malicious damage or theft;

      (5) Derailment or overturn of a conveyance.

   We do not insure loss, from any cause, to property on exhibition at fair grounds or premises of national or international expositions unless the premises are covered by this policy.

6. If Postage Stamps or Rare and Current Coins collections are covered:

   a. Fading, creasing, denting, scratching, tearing or thinning;

   b. Transfer of colors, inherent defect, dampness, extremes of temperature, or depreciation;

   c. Being handled or worked on;

   d. The disappearance of individual stamps, coins or other articles unless the item is:

      (1) Described and scheduled with a specific amount of insurance; or

      (2) Mounted in a volume and the page it is attached to is also lost; or

   e. Shipping by mail other than registered mail.

   However, we do not insure loss, from any cause, to property in the custody of transportation companies or not part of a stamp or coin collection.

**D. Territorial Limits**

We cover the property described worldwide.

Copyright, ISO Properties, Inc., 1999

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 04 60 10 00**

**E.  Special Provisions**

1.  Fine Arts: You agree that the covered property will be handled by competent packers.

2.  Golfer's Equipment includes your other clothing while contained in a locker when you are playing golf. We cover golf balls for loss by fire or burglary provided there are visible marks of forcible entry into the building, room or locker.

3.  Postage Stamps includes the following owned by or in the custody or control of the "insured":

    a.  Due, envelope, official, revenue, match and medicine stamps;

    b.  Covers, locals, reprints, essays, proofs and other philatelic property; or

    c.  Books, pages and mounting of items in **a.** and **b.**

4.  Rare and Current Coins includes the following owned by or in custody or control of the "insured":

    a.  Medals, paper money, bank notes;

    b.  Tokens of money and other numismatic property; or

    c.  Coin albums, containers, frames, cards and display cabinets in use with such collection.

**F.  Conditions**

1.  **Loss Settlement**

    Covered property losses are settled as follows:

    a.  **Agreed Value**

        We will pay, for each article or property designated in the Schedule, the full amount shown in the Schedule which is agreed to be the value of that article or property. At our request, you will surrender that article or property to us if not lost or stolen.

    b.  **Pair, Set Or Parts**

        If the scheduled article or property is a pair or set, or consists of several parts when complete, we will pay the full amount shown in the Schedule for that pair, set or complete article. At our request, you will surrender that article or property to us if not lost or stolen.

2.  **Lost Or Stolen Articles**

    In the event lost or stolen property is recovered and we have paid you the full amount shown in the Schedule for that property, you will surrender that property to us.

3.  **Buyback Of Surrendered Property**

    We will, at your request, sell back to you, at a price you and we agree upon, any class of property or scheduled article you surrendered to us to comply with the terms in Paragraphs **1.** or **2.** above.

4.  **Premium Adjustment**

    We will refund the unearned premium that applies to the scheduled article after the loss or you may apply it to the premium due for the replacement of that article.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# IMPORTANT NOTICE

**CAUTION: No coverage is provided by this notice, nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is a conflict between the policy and this Advisory Notice to Policyholders, THE PROVISIONS OF THE POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.**

## SCHEDULE

**Hurricane Deductible:**

Rhode Island law requires us to notify you that your Homeowners or Dwelling policy contains a separate deductible applicable to losses due to a hurricane. It is also important for you to know the following:

1. The hurricane deductible provides a percentage deductible of no more than five percent (5%) of the insured value, for property damage arising out of or caused by a hurricane as classified by the National Weather Service.

2. The applicable hurricane deductible is a calendar year deductible and applies to all covered losses caused by one or more hurricanes during the same calendar year.

3. With respect to damage to covered property caused by the "first hurricane", will pay only that part of the total of all loss payable that exceeds the applicable hurricane deductible.

4. With respect to damage to covered property caused by each "subsequent hurricane", we will pay only that part of the total of all loss payable under Section **I** — Property Coverages that exceeds the greater of:

   a. The remaining dollar amount of the applicable hurricane deductible for that calendar year; or

   b. The deductible listed in the policy Declarations which applies to loss caused by the peril of windstorm.

5. The applicable hurricane deductible:

   a. Only applies in Block Island:

      i. During the period beginning at the time a "hurricane" warning is issued for any part of Block Island by the National Weather Service;

      ii. When a "hurricane" results in hurricane force sustained winds for any part of Block Island, as reported by the National Weather Service;

      iii. Ending 24 hours following the termination of the last "hurricane" warning for any part of Block Island by the National Weather Service.

   b. Only applies anywhere in the state of Rhode Island other than Block Island:

      i. During the period beginning at the time of a "hurricane" warning is issued for any location in the state of Rhode Island, other than Block Island, by the National Weather Service;

      ii When a "hurricane" results in hurricane force sustained winds for any location in the state of Rhode Island, other than Block Island, as reported by the National Weather Service; and

      iii. Ending 24 hours following the termination of the last "hurricane" warning for any location in the state of Rhode Island, other than Block Island, by the National Weather Service.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **IN 03 03 01 13**
**Page 1 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

6.  The hurricane deductible will not be applied to your policy if you have installed certain approved mitigation measures to protect against windstorm damage and we have either:  **1)** inspected the property; or **2)** you have submitted satisfactory proof of installation of the approved measures. However, you may elect in writing to have the hurricane deductible still apply, in order to accept a lower policy premium. Please contact us or your agent if you require further information regarding the mitigation measures or the hurricane deductible.

The following are examples of how the hurricane deductible is applied in the event of a covered hurricane loss:

## Example 1

**Calendar Year 1 Scenario:**

- **A percentage hurricane deductible of 5%; and**
- **One hurricane loss occurs during the calendar year and it is the first hurricane during the calendar year causing damage to covered property.**

---

- A first hurricane occurs in calendar year one, and causes $25,000 of damage to the covered home.  The Coverage **A** Limit is $200,000 and the hurricane deductible is 5% of this limit, so your hurricane deductible will be $10,000.

  The most that you would be entitled to recover is the loss ($25,000) minus the hurricane deductible ($10,000) =  $15,000.

---

## Example 2

**Calendar Year 2 Scenario:**

- **A percentage hurricane deductible of 5%;**
- **First and subsequent hurricane loss, where there is a remaining calendar year hurricane deductible following the first hurricane loss; and**
- **When the hurricane deductible does not apply to loss caused by the peril of Windstorm, the deductible that applies under the policy is $500.**

---

- A first hurricane occurs in calendar year three, and causes $7,000 of damage to the covered home. The Coverage **A** limit is $200,000 and the hurricane deductible is 5% of this limit, so your hurricane deductible will be $10,000.

  Because the first loss ($7,000) does not exceed the hurricane deductible ($10,000) you are not entitled to recover any amount for this loss. The remaining calendar year hurricane deductible for any subsequent hurricane in the same calendar year is therefore, the calendar year hurricane deductible ($10,000) minus the loss for the first hurricane ($7,000) =  $3,000.

- A subsequent hurricane loss occurs in calendar year three and causes $25,000 of damage to the covered home.

  The most that you would be entitled to recover is the loss ($25,000) minus the remaining hurricane deductible ($3,000) =  $22,000.

  Because the remaining hurricane deductible ($3,000) is greater than the deductible that applies under the policy to loss caused by the peril of windstorm when the hurricane deductible does not apply ($500), the remaining hurricane deductible of $3,000 applies.

---

If you have any questions regarding this notice, please contact your agent or Service Center.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **IN 03 03 01 13**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# NOTICE!

## THIS POLICY DOES NOT COVER

## FLOOD LOSS

MOST PEOPLE DON'T THINK MUCH ABOUT FLOODS.  HOWEVER, 90% OF ALL DISASTERS IN THE U.S. ARE FLOOD RELATED.  ONE THIRD OF ALL FLOOD LOSSES OCCUR OUTSIDE GOVERNMENT IDENTIFIED SPECIAL FLOOD HAZARD AREAS.

FLOODS CAN HAPPEN ANYWHERE, ANYTIME. THEY CAUSE ANGUISH AND DESTRUCTION — PHYSICAL, EMOTIONAL AND FINANCIAL.

YOUR HOMEOWNERS POLICY DOES NOT PROVIDE COVERAGE FOR FLOODS.  **YOU WILL NOT HAVE COVERAGE FOR PROPERTY DAMAGE FROM FLOODS UNLESS YOU TAKE STEPS TO PURCHASE A SEPARATE POLICY OF FLOOD INSURANCE** AT AN ADDITIONAL PREMIUM FROM THE NATIONAL FLOOD INSURANCE PROGRAM, 42 U.S.C. SECTION 4002., et seq.

YOUR INDEPENDANT INSURANCE AGENT SHOULD BE CONSULTED TO OBTAIN FURTHER INFORMATION ON OBTAINING A FLOOD POLICY WITH SELECTIVE INSURANCE UNDER THE NATIONAL FLOOD INSURANCE PROGRAM.

If you would like more information about obtaining flood insurance, please contact the Selective Insurance Flood Department at (877)-348-0552.

This notice does not expand or increase coverage in any homeowners policy or endorsement.  That policy and accompanying endorsements remain subject to all exclusions, limitations and conditions.

**Misc.-1600 (05/00)**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**NO SECTION II — LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS**
**LIMITED SECTION I — PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS**

**HO 04 96 10 00**

**A.** "Business", as defined in the policy, means:

1. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

2. Any other activity engaged in for money or other compensation, except for the following:

    a. One or more activities:

        (1) Not described in **b.** through **d.** below; and

        (2) For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    b. Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    d. The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

1. That an "insured" engages in for money or other compensation; and

2. From which an "insured" receives more than $2000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business"

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

1. Described in **A.2.** above; and

2. Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

1. Does not provide:

    a. Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2**. of Section **II** — Exclusions;

    b. Coverage, under Section **I,** for other structures from which any "business" is conducted; and

2. Limits Section **I** coverage, under Coverage **C** — Special Limit of Liability, for "business" property:

    a. On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

    b. Away from the "residence premises" for the home day care "business" to $500. This is because Category **i. (f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises." Category **i.** Does not apply to property describe in Categories **j.** and **k. (g.** and **h.** respectively in Form **HO 00 08**.)

Copyright, Insurance Services Office, Inc., 1999

**HO 04 96 10 00**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# IMPORTANT NOTICE CONCERNING YOUR RHODE ISLAND HOMEOWNERS POLICY

**F-1212 01 13**

## A SPECIAL DEDUCTIBLE NOW APPLIES FOR LOSSES THAT ARE CAUSED BY A HURRICANE

Your Selective Insurance Company of South Carolina ("Selective") Homeowners policy includes a special Hurricane Percentage Deductible that applies to damage occurring as a direct result of a storm designated as a hurricane by the National Weather Service. This deductible ranges from 1% up to 5% based on your home's location, including its distance from the coast. This deductible applies **during the period of time commencing with the issuance for a hurricane warning bulletin for any part of the state of Rhode Island by the National Weather Service and concluding twenty-four (24) hours after the termination of the last hurricane warning bulletin for any part of the state of Rhode Island**.

Please check your policy Declaration page and Deductible — Section **I** for the following wording:

**\*"_____ % HURRICANE DEDUCTIBLE APPLIES"**;
in order to determine what percentage deductible applies to your policy.

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR THE HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU. THE ENCLOSED EXAMPLE ILLUSTRATES HOW THE DEDUCTIBLE MIGHT AFFECT YOU.**

The hurricane deductible is based on a percentage of your Coverage A Dwelling Limit. For example, if your policy has a hurricane deductible of 3%, a dwelling insured for $100,000 will have a $3,000 deductible applied to a loss caused by a hurricane to your dwelling, other structures on your premises, your personal property and additional living expense.

**EXAMPLE:**

The Coverage A — Dwelling Limit of Liability shown in the declarations is $100,000.

1. If the deductible percentage amount is 2% and the total of all loss to the dwelling is $10,000, calculate as follows:

   **Step 1:** $100,000 x 2% =  deductible of $2,000

   **Step 2:** $10,000 loss - $2,000 deductible =  $8,000

   The amount of loss the "insured" would recover for is $8,000.

2. If the deductible percentage amount is 3% and the total of all loss to the dwelling is $10,000, calculate as follows:

   **Step 1:** $100,000 x 3% =  deductible of $3,000

   **Step 2:** $10,000 loss - $3,000 deductible =  $7,000

   The amount of loss the "insured" would recover for is $7,000.

3. If the deductible percentage amount is 5% and the total of all loss to the dwelling is $10,000, calculate as follows:

   **Step 1:** $100,000 x 5% =  deductible of $5,000

   **Step 2:** $10,000 loss - $5,000 deductible =  $5,000

   The amount of loss the "insured" would recover for is $5,000.

**\*Entry may be left blank if shown on the policy declarations.**

Copyright, 2012 Selective Insurance Company of America. All rights reserved.

**F-1212 01 13**
**Page 1 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**F-1212 01 13**

A complete explanation of the hurricane deductible can be found in the form entitled Hurricane Deductible (**HO 03 57**) attached to your policy. It is very important that you review this endorsement carefully.

You may qualify for a waiver of the hurricane deductible if you have or will take some preventive steps to reduce damage from a hurricane, such as; installation of plywood shutters, storm shutters or other acceptable mitigation measures on all exterior openings. The waiver would apply during the period of time the preventative measures are in place.

Selective appreciates your business and thanks you for the opportunity to service your account. Questions about this deductible and other options available to you should be directed to your Independent Insurance Agent.

Copyright, 2012 Selective Insurance Company of America. All rights reserved.

**F-1212 01 13**

**Page 2 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:02-04-MED-PAS   Document 12   Filed 05/09/25   Page 59 of 108 PageID #: 86

# CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE INCREASED LIMIT

HO 04 53 10 00

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SCHEDULE*

| SECTION I — PROPERTY COVERAGES |
| --- |
| **ADDITIONAL COVERAGES** |
| **6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money** |
| The limit of liability for this coverage is increased as noted below. |

| Increase In Limit Of Liability | Total Limit Of Liability |
| --- | --- |
|  |  |

All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

Copyright, Insurance Services Office, Inc., 1999

HO 04 53 10 00

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**PERSONAL INJURY**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### DEFINITIONS

The following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

**1.** False arrest, detention or imprisonment;

**2.** Malicious prosecution;

**3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**4.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**5.** Oral or written publication of material that violates a person's right of privacy.

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

However, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

### SECTION II — LIABILITY COVERAGES

### A.  Coverage E — Personal Liability

The following is added to Coverage **E** — Personal Liability:

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

### SECTION II — EXCLUSIONS

With respect to the coverage provided by this endorsement, **Section II — Exclusions** is deleted and replaced by the following:

This insurance does not apply to:

**1.** "Personal Injury":

**a.** Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

**b.** Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

**c.** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**d.** Arising out of a criminal act committed by or at the direction of an "insured";

**e.** Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

**f.** Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

**g.** Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 24 82 04 02**

This exclusion does not apply to:

**(1)** The rental or holding for rental of an "insured location";

    **(a)** On an occasional basis if used only as a residence;

    **(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

    **(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**h.** Arising out of civic or public activities performed for pay by an "insured";

**i.** To you or an "insured" as defined under Definition **5.a.** or **b.;**

This exclusion also applies to any claim made or suit brought against you or an "insured":

**(1)** To repay; or

**(2)** Share damages with; or

Another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

**j.** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**k.** Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

**2.** Any loss, cost or expense arising out of any:

    **a.** Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

    **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants, "fungi", wet or dry rot, or bacteria.

## SECTION II — ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **D.** Loss Assessment is deleted and replaced by the following:

**D. Loss Assessment**

We will pay up to $1000 for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of "personal injury".

## SECTION II — CONDITIONS

With respect to the coverage provided by this endorsement, Section **II** — Condition **I.** Policy Period does not apply and Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **C. Duties After "Occurrence"** are deleted and replaced by the following:

**A. Limit Of Liability**

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage **E.** This limit is the same regardless of the number of "insureds", claims made or suits brought.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 24 82 04 02**

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

**C. Duties After Offense**

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

    **a.** The identity of the policy and "named insured";

    **b.** Reasonably available information on the time, place and circumstances of the offense; and

    **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the offense;

**4.** At our request, help us:

    **a.** To make settlement;

    **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    **c.** With the conduct of suits and attend hearings and trials; and

    **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

All other provisions of this policy apply.

Copyright, ISO Properties, Inc., 2001

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW

**F-1305 03 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### A. Coverage

We insure, up to the water back-up and sump overflow limit of liability listed on the declarations page, for direct physical loss, not caused by the negligence of an "insured", to property covered under Section **I** caused by water, or waterborne material, which:

**1.** Backs up through sewers or drains; or

**2.** Overflows or is discharged from a:

  **a.** Sump, sump pump; or

  **b.** Related equipment;

  even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverages **A, B, C** or **D** stated in the Declarations.

### B. Section I — Perils Insured Against

With respect to the coverage described in **A.** above, Paragraphs:

**A.2.c.(6)(b)** in Form **HO 00 03;**

**A.2.e.(2)** in Form **HO 00 05;**

**2.j.(2)** in Endorsement **HO 05 24;**

**3.j.(2)** in Endorsement **HO 17 31;** and

**2.c.(6)(b)** in Endorsement **HO 17 32;**

are replaced by the following:

Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

### C. Special Deductible

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement.

Please refer to your policy declarations page for the deductible applicable to this coverage.

This deductible does not apply with respect to Coverage **D** — Loss of Use.

### D. Exclusion

The **Water Damage** Exclusion is replaced by the following:

**Water**

This means:

**1.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**2.** Water which:

  **a.** Backs up through sewers or drains; or

  **b.** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

  as a direct or indirect result of flood;

**3.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**4.** Waterborne material carried or otherwise moved by any of the water referred to in **D.1.** through **D.3.** of this Exclusion.

This Exclusion applies regardless of whether any of the above, in **D.1.** through **D.4.**, is caused by an act of nature or is otherwise caused.

This Exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **D.1.** through **D.4.**, is covered. All other provisions of this policy apply.

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**F-1305 03 13**
**Page 1 of 1**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**NOTICE OF INFORMATION PRACTICES (LONG FORM)**

**MISC-798 06 01**

Your application or information you provide in connection with a claim is our major source of information. However, in order to evaluate your application for insurance, to service your policy or to process a claim, we may ask for additional information about you and any person who will be insured under this policy or who is the subject of the claim. This is sometimes necessary to make certain that the statements on your application are accurate or to process the claim. We may also need more details than you have already given us.

**INFORMATION WE COLLECT**

In connection with an application, the information that we may collect will enable us to make possible judgments about your character, habits, hobbies, finances, occupation, general reputation, health or other personal characteristics. In connection with a claim, the information we may collect will enable us to process the claim.

We may obtain this information from several sources. For example, we may contact any physician, clinic or hospital where any persons to be insured or making a claim have been treated. We may need information from your employer. But, before we ask for information from any of these sources, we will ask you to sign an authorization, which gives us permission to proceed, unless authorization is not required by law.

We may get information by talking or writing to other insurance companies to which you applied for a policy or with which you have made a claim, members of your family, neighbors, friends, your insurance agent and others who know you. We may also obtain information from motor vehicle reports, court records, or photographs of the property you want insured or with regard to which you have made a claim.

**CONSUMER REPORTS**

It is common for an insurance company to order a report from an independent organization — a consumer reporting agency or an insurance-support organization — to verify and add to the information that you have given us. These reports are used to help us decide if you qualify for the insurance for which you have applied or to evaluate the claim you have made.

They may:

_____ pertain to your mode of living, character, general reputation and personal characteristics such as health, job and finances.

_____ contain information on your marital status, driving records, etc.

_____ include information on the loss history of your property.

_____ include information gathered by talking or writing to you or members of your family, neighbors, friends, your insurance agent and others who know you.

_____ include information from motor vehicle reports, court records or photographs of your property and/or the property involved in the claim.

Upon your request, the consumer reporting agency or insurance-support organization will attempt to interview you in connection with any report it prepares. The information may be kept by the reporting organization and may later be given to others who use its services. It will be given only to the extent permitted by the Federal Fair Credit Reporting Act and your local state law, if any. Upon request and identification, the consumer reporting agency or insurance-support organization will provide you with a copy of the report.

**MISC-798 06 01**
**Page 1 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**MISC-798 06 01**

**DISCLOSURE OF INFORMATION**

Information we collect about you will not be given to anyone without your consent, except when necessary to conduct our business.  There are some disclosures which may be made without your prior authorization.  These include:

_____  Persons or organizations who need the information to perform a professional, business or insurance function for us, such as businesses that assist us with data processing or marketing.

_____  Other insurance companies, agents, or consumer reporting agencies as it may be needed in connection with any application, policy or claim involving you.

_____  Adjusters, appraisers, investigators and attorneys who need the information to investigate or settle a claim involving you.

_____  An insurance-support organization which is established to collect information for the purpose of detecting and preventing insurance crimes or fraudulent claims.

_____  A medical professional or institution to verify your insurance coverage or inform you of a medical condition of which you may not be aware.

_____  Persons or organizations that conduct scientific research, including actuarial or underwriting studies.

_____  Persons or organizations that will use the information for sales purposes, unless you indicate in writing to us that you do not want the information disclosed for this purpose.

_____  Our affiliated companies for auditing our operations and for marketing an insurance product or service.

In addition, we may provide information to state insurance departments in connection with their regulatory authority and to other governmental or law enforcement authorities to protect our legal interests or in cases of suspected fraud or illegal activities.

**YOUR INSURANCE POLICY FILES**

Information we collect about you will be kept in our policy files.  We may refer to this information if you file a claim for benefits under any policy you have with us or if you apply to us for a new policy.  You have the right to know what kind of information we keep in our files about you, to have access to the information, and to receive a copy.  There are some types of information; however, to which we are not required to give you access.  This type of information is generally collected when we evaluate a claim or when the possibility of a lawsuit exists.

If you want information from your files, please contact us.  There may be a nominal charge for copies of records.  If you think your file contains incorrect information, notify us indicating what you believe is incorrect and your reasons.  We will reinvestigate the matter and either correct our records or place a statement from you in our files explaining why you believe the information is incorrect.  We will also notify persons or organizations to whom we previously disclosed the information of the change or your statement.

**CONFIDENTIALITY AND SECURITY OF PERSONAL INFORMATION**

We restrict access to personal information to those individuals who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with legal standards and ensure the confidentiality of personal information in accordance with our policy.

**TREATMENT OF PERSONAL INFORMATION OF FORMER CUSTOMERS AND APPLICANTS**

We adhere to this personal information privacy policy even when a customer relationship no longer exists.  Disclosures about former applicants and customers may be made without prior authorization as permitted by law.

If you have any questions about our information practices, please contact us.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**When you make changes to your home — shouldn't your insurance change too?**

Something as simple as putting a new roof on your home might not seem like a big deal, but it could help lower your insurance rates.**\***

You've chosen your independent insurance agent because they know you and your individual needs. Your agent is also knowledgeable about how changes to your property may affect your insurance premium. So be sure to notify them of any upgrades you make, including:

- **Installing a new roof**
- **Installing a new heating system**
- **Adding a home protection system (fire, burglary, carbon monoxide, etc.)**
- **Upgrades and additions to the structure**

When you keep your agent informed, they will not only let you know how changes to your home affect your insurance premium, but they can also make you aware of additional savings opportunities, such as a multi-policy discount for having your home and auto policies with one company.

Talk to your independent insurance agent today to make sure you are getting all of the savings available to you!

**\***Not all modifications, upgrades, or changes to your property will result in a decrease in your insurance premium.

Copyright, 2015 Selective Insurance Company of America. All rights reserved.

**MISC-1841 07 15**
**Page 1 of 1**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# LIMITED FUNGI, WET OR DRY ROT, BACTERIA COVERAGE

## ADVISORY NOTICE TO POLICYHOLDERS

THIS NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED WITH.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

**When the limited fungi, wet or dry rot, or bacteria coverage endorsement is attached to your policy:**

- **The amount of property insurance available for loss to your property caused by "fungi", wet or dry rot, or bacteria is reduced.  Coverage is only provided for loss caused by "fungi", wet or dry rot, or bacteria if such "fungi", wet or dry rot, or bacteria is the result of a covered peril.  "Fungi" are defined in the endorsement and include mold; and**

- **Coverage is added for the testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria; and**

- **The amount of liability insurance available for injury or damage arising directly or indirectly out of "fungi", wet or dry rot, or bacteria is reduced.**

## SECTION I — PROPERTY COVERAGES

If "fungi", wet or dry rot, or bacteria results from a covered peril and damages your property, loss caused by such "fungi", wet or dry rot, or bacteria is covered.  However, the amount of insurance available for such coverage is limited to the amount specified on the endorsement (or if not on the endorsement, the Declarations page of your policy.)

Coverage, up to the specified amount of insurance, includes:

1. The cost to remove fungi, wet or dry rot, or bacteria from covered property;

2. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the fungi, wet or dry rot, or bacteria; and

3. The cost of testing of air or property to confirm the absence, presence or level of fungi, wet or dry rot, or bacteria whether performed prior to, during or after removal. repair, restoration or replacement.  The cost of such testing will be provided only to the extent that there is a reason to believe that fungi, wet or dry rot, or bacteria is present.

Includes copyrighted material of ISO Properties, Inc., with its permission.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**NOTE:**    Coverage is available **ONLY** if loss or costs results from a Peril Insured Against that occurs during the policy period.

**Our Limit of Liability**

We will provide up to $10,000 of coverage. The limit is the most we will pay for the total of all loss or costs payable regardless of the number of locations insured under your policy or the number of claims made.

**SECTION II — LIABILITY COVERAGE**

We have limited the amount of insurance available to you when a claim is made or a suit is brought against you by another person alleging damages because of bodily injury or property damage arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any fungi, wet or dry rot, or bacteria.

Previously, your liability coverage for damages caused by fungi, wet or dry rot, or bacteria was provided on an occurrence basis.  The new limit of liability is provided on an aggregate basis.  This means that the limit for liability coverage shown in the endorsement ($50,000) is the most we will pay for all damages resulting from the total of all bodily injury or property damage, occurring during the entire policy period, that is a result of fungi, wet or dry rot, or bacteria.  This aggregate limit is the most we will pay regardless of the number of locations insured under the policy, number of persons injured, number of persons whose property is damaged, number of insureds, or the number of occurrences or claims made against you.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**F-1148 09 02**
**Page 2 of 2**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# COMMON LOSS DEDUCTIBLE

**MISC-1832 12 15**

Your policy is changed to add the following to the Deductible provision.

If both your Personal Automobile(s) and Home are insured with Selective Insurance Company of America or one of its affiliates, and you suffer a loss to more than one insured property from a single incident, the highest of the applicable deductibles to your policies shall apply. Only the highest of the applicable deductible amounts shown on the declarations for the affected policies shall apply. If the highest applicable deductible reduces the amount of the loss on that policy to zero, then the remaining applicable deductible shall be waived.

The following additional conditions apply:

1.  In the event one of the applicable deductibles is waived due to another policy provision, the other applicable deductible will not be waived.

2.  When one single highest deductible is not available, because the applicable deductibles from both the Personal Automobile and Homeowners policy are equal, the deductible that will apply is the one for the item with the highest amount of loss.

3.  In the event multiple Personal Automobiles are involved in the same loss, affected by this provision, only one Personal Automobile deductible will be waived. In this instance we will determine the Personal Automobile deductible to be waived based on either of the methods described in item **1.** or **2.** above.

4.  In the event multiple Homeowner deductibles apply in the same loss, affected by this provision, only one Homeowner deductible will be waived. In this instance we will determine the Homeowner deductible to be waived based on either of the methods described in item **1.** or **2.** above.

This provision does not apply to loss caused by Earthquake or Volcanic Eruption, Sinkhole, Named Storm, or Hurricane.

Each loss to your property shall be adjusted separately. You cannot collect more than the applicable limit of insurance. This provision applies only, if at the time of the loss, the Company insures your affected property which includes only: Personal Automobile and Homeowner.

Except for the changes this coverage makes, all other terms and conditions of the policy apply.

Copyright, 2015 Selective Insurance Company of America. All rights reserved.

**MISC-1832 12 15**
**Page 1 of 1**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
FOR USE WITH FORMS HO 00 03 AND HO 00 05**

**HO 04 27 04 02**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SCHEDULE*

| | | |
|---|---|---|
| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims-made, or the number of locations insured under this endorsement and listed in this Schedule. | | |
| **1.** | Section **I** — Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| **2.** | Section **II** — Coverage **E** Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | | |

**DEFINITIONS**

The following definition is added:

**"Fungi"**

    **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **b.** Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I — PROPERTY COVERAGES**

**E. Additional Coverages**

Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

    **13. "Fungi", Wet Or Dry Rot, Or Bacteria**

        **a.** The amount shown in the Schedule above is the most we will pay for:

            **(1)** The total of all loss payable under Section **I** — Property Coverages caused by "fungi", wet or dry rot, or bacteria;

            **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section **I** — Property Coverages;

            **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

            **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

        **b.** The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

Copyright, ISO Properties, Inc., 2001

**HO 04 27 04 02**
**Page 1 of 3**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:25-cv-00204-MRD-PAS    Document 1-2    Filed 05/09/25    Page 71 of 108 PageID #: 78

HO 04 27 04 02

**c.** The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

**(1)** Number of locations insured under this endorsement; or

**(2)** Number of claims-made.

**d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I — PERILS INSURED AGAINST

In Form **HO 00 03**:

**A. Coverage A — Dwelling And Coverage B — Other Structures**

Paragraph **2.c.(5)** is deleted and replaced by the following:

**(5)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

**(c)** Smog, rust or other corrosion;

**B. Coverage C — Personal Property**

**12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is deleted and replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 05**:

**A.** Under Coverages **A**, **B** and **C:**

Paragraph **2.d.** is deleted and replaced by the following:

**d.** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion;

## SECTION I — EXCLUSIONS

Exclusion **A.10.** is added.

**10. "Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

**(a)** When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

Copyright, ISO Properties, Inc., 2001

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**HO 04 27 04 02**

**(b)** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section **I** — Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I — CONDITIONS

Condition **P. Policy Period** is deleted and replaced by the following:

**P. Policy Period**

This policy applies to loss or costs which occur during the policy period.

## SECTION II — CONDITIONS

Condition **A. Limit Of Liability** is deleted and replaced by the following:

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims-made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section **II** — Coverage **E** Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds", or

**5.** Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in **A.** Limit Of Liability of this endorsement, Condition **B. Severability Of Insurance** is deleted and replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** — Conditions, **A.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

Copyright, ISO Properties, Inc., 2001

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT**

**HO 04 90 10 00**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A. ELIGIBLE PROPERTY**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage **C;** and

   b. If covered in this policy,

      (1) Awnings, outdoor antennas and outdoor equipment, and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments trimmed with fur or consisting principally of fur; or

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware, and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (3) Smoking implements; or

      (4) Jewelry; and

   f. Golfer''s equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement coverage will not apply to other classes of property separately described and specifically insured.

**B. INELIGIBLE PROPERTY**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. REPLACEMENT COST LOSS SETTLEMENT CONDITION**

The following loss settlement condition applies to property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C**, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described **A.2.a. – f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1999

**HO 04 90 10 00**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# SUMMIT CLASSIC HOMEOWNERS ENDORSEMENT

**F-1217 08 11**

## HO 00 03, HO 00 05 AND HO 00 06 POLICY
## THE FOLLOWING ENDORSEMENTS CHANGE THE POLICY.  PLEASE READ IT CAREFULLY.

### INCREASED SPECIAL LIMITS OF LIABILITY

**SECTION I — PROPERTY COVERAGES, C. Coverage C — Personal Property, 3. Special Limits Of Liability, a.** through **h.** is deleted and is replaced by the following:

**a.** $1,000 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $5,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists. This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $3,000 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $3,000 on trailers or semi-trailers not used with watercraft of all types.

**e.** $10,000 ($5,000 per item) for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

**f.** $5,000 for loss by theft, misplacing or losing of firearms and related equipment.

**g.** $2,500 for loss by theft, misplacing or losing of silverware, silver-plated ware, gold-ware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $5,000 on property, on the "residence premises", used primarily for "business" purposes.

### DEBRIS REMOVAL

**SECTION I — PROPERTY COVERAGES, E. Additional Coverages, 1. Debris Removal, b.** is deleted and is replaced by the following:

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your tree(s) felled by the peril of Wind-storm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's tree(s) felled by a Peril Insured Against;

provided the tree(s):

The $1,000 limit is the most "we" will pay in any one "physical" loss regardless of the number of fallen trees, amount of debris from trees, shrubs, or other plants, or to whom they belong. No more than $1,000 of this limit will be paid for the removal of any one tree.

### CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE

**SECTION I — PROPERTY COVERAGES, E. Additional Coverages, 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

The limit of liability for this coverage is increased from $500 to $5,000.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**F-1217 08 11**
**Page 1 of 8**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**F-1217 08 11**

## LOSS ASSESSMENT COVERAGE

### SECTION I — PROPERTY COVERAGES, E. Additional Coverages, 7. Loss Assessment

The limit of liability for this coverage is increased from $1,000 to $10,000.

## COLLAPSE

### SECTION I — PROPERTY COVERAGES, E. Additional Coverages, 8. Collapse

Paragraph **a.** is deleted and is replaced by the following:

**a.** Perils Insured Against in Coverage **A.**

The following paragraph is also added:

This additional coverage does not apply to Coverage **C** — Personal Property.

## ORDINANCE OR LAW

### SECTION I — PROPERTY COVERAGES, E. Additional Coverages, 11. Ordinance Or Law, a. is deleted and is replaced by the following:

**a.** You may use up to 25% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

This is Additional Coverage **10.** in Form **HO 00 06.**

**If you purchase Ordinance Or Law Coverage Endorsement HO 04 77 this provision will not apply.**

All other provisions of this policy apply.

## EARTH MOVEMENT

### SECTION I — EXCLUSIONS, A. 2. Earth Movement

The following paragraph is added:

This exclusion applies only to property described in Coverage **A.**

## WATER DAMAGE

### SECTION I — EXCLUSIONS, A. 3. Water Damage

The following paragraphs are added:

Water damage to property described in Coverage **C** away from a premises or location owned, rented, occupied or controlled by an "insured" is covered.

Water damage to property described in Coverage **C** on a premises or location owned, rented, occupied or controlled by an "insured" is excluded even if weather conditions contribute in any way to produce the loss.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **F-1217 08 11**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:25-cv-00204-MRD-PAS    Document 1-2    Filed 05/09/25    Page 76 of 108 PageID
#: 83

**F-1217 08 11**

## LIMITS OF LIABILITY AND COVERAGE RELATIONSHIPS

**SECTION II — LIABILITY**

Coverage limits for the Residence Premises — Basic Limits are increased as follows:

    **E.**  Personal Liability:         $300,000 Each Occurrence

    **F.**  Medical Payments to Others:   $5,000 Each Person

Basic limits written apply to any Other Exposures covered under the policy, unless otherwise stated, for an additional premium.

## WATERCRAFT LIABILITY COVERAGE

**SECTION II — EXCLUSIONS , B. "Watercraft Liability", B. 2. c. (2) (a)** is deleted and replaced:

    **(a)**  50 total horsepower or less;

## GOLF CART LIABILITY COVERAGE

**SECTION II — ADDITIONAL COVERAGES**

The following is added subject to the limits of liability:

    **E.**  **Golf Carts.** Coverage **E** — Personal Liability and Coverage **F** — Medical Payments to Others apply to bodily injury or property damage arising out of the ownership, maintenance, use, loading and/or unloading of your golf carts while used for golfing purposes or for personal use within the subdivision where the insured resides.

## GOLF CART COVERAGE

We will pay up to $5,000 for direct loss of or damage to your golf carts, their original parts, equipment and accessories. However, we will not pay you for loss or damage:

    **a.**  Due to neglect or mechanical or electrical breakdown or failure, or manufacturer defect;

    **b.**  If your golf carts are being used for any illegal trade or business, or for any business or for professional purposes;

    **c.**  If such a loss is limited only to the tires and wheels, unless they are damaged by fire or stolen;

    **d.**  To your golf carts, their parts and equipment, caused only by impact of their wheels and the road or the ground.

This coverage is additional insurance and NO deductible applies to this coverage.

## LOCK REPLACEMENT COVERAGE

We will pay up to $250. in the aggregate for any one occurrence for the cost of replacing window and/or door locks of the residence premises when the keys are lost or stolen along with other property owned by you or a relative. The theft must be covered by your policy. For this coverage to apply, you must immediately notify the police upon discovery of the theft. If lost you must notify us within 72 hours of discovery of the loss.

This coverage is additional insurance and NO deductible applies to this coverage.

## PERSONAL INJURY COVERAGE

Refer to Personal Injury form for coverage details.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **F-1217 08 11**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**F-1217 08 11**

## REFRIGERATED PROPERTY

**A. Definitions**

The following definition is added:

"Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.

**B. Coverage**

1. We insure, up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

   **a.** "Loss of power" to the refrigeration unit. "Loss of power" must be caused by damage to:

      **(1)** Generating equipment; or

      **(2)** Transmitting equipment; or

   **b.** Mechanical failure of the unit which stores the property.

2. Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

3. This endorsement does not increase the limit of liability for Coverage **C.**

**C. Special Deductible**

This section does not apply.

**D. Exception To Power Failure Exclusion**

The Power Failure exclusion does not apply to this coverage.

All other provisions of this policy apply.

This coverage is additional insurance and NO deductible applies to this coverage.

## REWARDS COVERAGE

We will pay 10% of the amount of loss up to a maximum of $1,000 to an eligible person providing information leading to the arrest and conviction of anyone who perpetrates an arson loss at an "insured location" or who robs, steals or burglarizes any covered person's property. We will also pay an eligible person providing assistance in the recovery of stolen property, 10% of the value of the recovered property, up to a maximum of $1,000. The deductible does not apply.

An eligible person means that person designated by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

**(1)** An "insured";

**(2)** A relative of an "insured";

**(3)** An employee of a law enforcement agency.

This coverage is additional insurance and NO deductible applies to this coverage.

## THEFT OF BUILDING MATERIAL COVERAGE

We agree to provide up to $10,000 theft coverage for your dwelling under construction as stated below:

Property covered — Building materials and supplies, fixtures or equipment which will be a permanent part of a new dwelling, existing dwelling or other structure under construction at the insured location.

This coverage is additional insurance and NO deductible applies to this coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **F-1217 08 11**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**F-1217 08 11**

---

### WATER BACK-UP

The limit of liability for this coverage is $5,000. Refer to **WATER BACK-UP** form for coverage details.

---

### WEDDING PRESENT COVERAGE

The limit of liability for this coverage is $10,000.

The policy covers wedding presents owned by the Insured received no earlier than 30 days prior to the wedding date and extending no further than 60 days after the wedding date. Wedding presents as defined in the policy are personal property and do not include certain items such as: Realty, Animals, Automobiles, Boats, Bicycles, Money, Tickets, and Excluded items under Coverage **C** Personal Property.

This coverage is additional insurance and NO deductible applies to this coverage.

---

## HO 00 03 AND HO 00 05 Policy
## THE FOLLOWING ENDORSEMENTS CHANGE THE POLICY.  PLEASE READ IT CAREFULLY.

---

### HOME REBUILDER COVERAGE

We agree to amend the present coverage amounts in accordance with the following provisions:

**Part 1.**

If you have:

   **a.** Allowed us to adjust the Coverage **A** limit of liability and the premium in accordance with:

   **(1)** The property evaluations we make; and

   **(2)** Any increase in inflation; and

   **b.** Notified us, within 30 days of completion, of any alterations to the dwelling which increase the replacement cost of the dwelling by 5% or more; and

   **c.** Elected to repair or replace the damaged building;

We will:

   **a.** Increase the Coverage **A** limit of liability to equal the current replacement cost of the dwelling if the amount of loss to the dwelling is more than the limit of liability indicated on the Declarations page;

   **b.** Also increase by the same percentage applied to Coverage **A** the limits of liability for Coverages **B, C** and **D.** However, we will do this only if the Coverage **A** limit of liability is increased under Paragraph **a.** above as a result of a Coverage **A** loss;

   **c.** Adjust the policy premium from the time of loss for the remainder of the policy term based on the increased limits of liability.

**Part 2.**

If you comply with the provisions of this endorsement and there is a loss to a building insured under Coverage **A.,** Section **I** Condition **3.** Loss Settlement Paragraph **b.** is deleted and replaced by Paragraphs **b., c.** and **d.** as follows:

   **b.** Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts of equivalent construction and use on the same premises:

   **(1)** The replacement cost of the building or any parts of it;

   **(2)** The amount actually and necessarily spent to repair or replace the building or any parts of it;

   **(3)** The applicable limit of liability whether increased or not, adjusted in accordance with **Part 1.** above. The most the company will pay is 50% above the Coverage **A** Limit of Liability.

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.         **F-1217 08 11**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:25-cv-00204-MRD-PAS    Document 1-2    Filed 05/09/25    Page 79 of 108 PageID
#: 86

**F-1217 08 11**

  c. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

  d. You may disregard the replacement cost loss settlement provisions and make an initial claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make a claim within 180 days after loss for any additional liability on a replacement cost basis.

All other provisions of this policy apply.

---

## PERSONAL PROPERTY

---

**PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT,** Form **HO 04 90** is automatically included.

Coverage **C** — Personal Property is increased to 75% of Coverage **A.**

---

## HO 00 06 Policy
## THE FOLLOWING ENDORSEMENTS CHANGE THE POLICY.  PLEASE READ IT CAREFULLY.

---

### UNIT-OWNERS COVERAGE C SPECIAL COVERAGE

---

**AGREEMENT**

We agree to provide the Special Coverage in this endorsement with the understanding that you occupy the unit in which the property covered under Coverage **C** is located.

**SECTION I — PROPERTY COVERAGES**

**D. Additional Coverages**

 **8. Collapse**

  Paragraph **b.(1)** is deleted and replaced by the following:

  **(1)** The Perils Insured Against under Coverage **A;**

  With respect to Coverage **C,** Paragraph **8. Collapse** is deleted.

**SECTION I — PERILS INSURED AGAINST**

For Coverage **C,** The Perils Insured Against are deleted and replaced by the following:

We insure against the risk of direct physical loss to property described in Coverage **C.**

We do not insure, however, for loss:

**1.** Excluded under **SECTION I — EXCLUSIONS;**

**2.** To property in a unit regularly rented or held for rental to others by you;

**3.** Caused by:

 **a.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

  **(1)** Maintain heat in the building; or

  **(2)** Shut off the water supply and drain the system and appliances of water;

 However, if the building is protected by an automatic sprinkler system, you must use reasonable care to continue the water supply or maintain heat in the building for coverage to apply.

 For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout, or similar fixtures or equipment.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  **F-1217 08 11**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**F-1217 08 11**

**b.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(1)** Fence, pavement, patio, deck or swimming pool;

**(2)** Footing, foundation, bulkhead, wall or any other structure or device, that supports all or part of a building or other structure;

**(3)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(4)** Pier, wharf or dock;

**c.** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**d.** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(1)** A plumbing, heating air conditioning or automatic fire protective sprinkler system or a household appliance on the "residence premises"; or

**(2)** A storm drain or water, steam or sewer pipes off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**e.** Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

There is coverage for breakage of the property by or resulting from:

**(1)** Fire, lightning, windstorm, hail;

**(2)** Smoke, other than smoke from agricultural smudging or industrial operations;

**(3)** Explosion, riot, civil commotion;

**(4)** Aircraft, vehicles, vandalism and malicious mischief;

**(5)** Collapse of a building or any part of a building:

**(6)** Water not otherwise excluded;

**(7)** Theft or attempted theft; or

**(8)** Sudden and accidental tearing apart, cracking, burning or bulging of:

**(a)** A steam or hot water heating system;

**(b)** An air conditioning or automatic fire protective sprinkler system; or

**(c)** An appliance for heating water;

**f.** Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

**g.** Refinishing, renovating or repairing property other than watches, jewelry and furs;

**h.** Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard engines or motors; or

**i.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body; or

**j.** Any of the following:

**(1)** Wear and tear, marring, deterioration;

**(2)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(3)** Smog, rust or other corrosion or dry rot;

**(4)** Smoke from agricultural smudging or industrial operations;

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**F-1217 08 11**

**(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by one or more of the Perils Insured Against that would apply under Coverage **C** of the policy form if this endorsement were not attached to the policy form.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(6)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(7)** Birds, vermin, rodents or insects; or

**(8)** Animals owned or kept by an "insured."

## Exception to 3.j.

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **C** resulting from an accidental discharge or overflow of water or steam form within a:

**(a)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(b)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** — Exclusion **3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground, do not apply to loss by water covered under Paragraphs **3.d.** and **j.** above.

Under Paragraphs **3.a.** through **e., i.** and **j.,** any ensuing loss to property described in Coverage **C** not precluded by any other provision in this policy is covered.

## SECTION I — EXCLUSIONS

**3. Water Damage.**

The following paragraphs are added:

This exclusion does not apply to property described in Coverage **C** that is away from a premises or location owned, rented, occupied or controlled by an "insured".

This exclusion applies to property described in Coverage **C** on a premises or location owned, rented, occupied or controlled by an " insured" is even if weather conditions contribute in any way to produce the loss.

All other provisions of this policy apply.

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# EXHIBIT 2

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.



**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026

| DIRECTION TO PAY FORM | 2.22.2025 |
|---|---|

**CUSTOMER**

Michael R. Resnick

Kate C. Resnick

548 Buttonwoods Avenue

Warwick, RI 02886

Michael's Email: ResnickElectric@gmail.com

Phone: 401-228-5663

Kate's Email: Kate.BKPResources@gmail.com

Kate's Cell: 617-980-9713

## DIRECTION TO PAY

     I/We authorize and direct **Selective Insurance** to **DIRECTLY** pay my/our chose-in-action assignee, NEW ENGLAND PROPERTY SERVICES GROUP, LLC, all insurance proceeds issued as payments relating to **Claim Number 21798287**, which includes any payments issued, but which have not been deposited by me/us, and of which NEW ENGLAND PROPERTY SERVICES GROUP, LLC requests to have the payment(s) issued to them in accordance with the Loss Payment Provision within my/our Policy which offers the ability to direct **Selective Insurance** to pay someone that "is legally entitled to receive payment", which in this case, NEW ENGLAND PROPERTY SERVICES GROUP, LLC is legally entitled to receive payment.  Please further note, payment issued to NEW ENGLAND PROPERTY SERVICES GROUP, LLC should not list my/our name(s) as this DIRECTION TO PAY does hereby remove me/us from being named as a Payee with my/our full understanding.

     I/We acknowledge that I/We have not assigned my/our insurance policy to NEW ENGLAND PROPERTY SERVICES GROUP, LLC.  Instead, I/We have only assigned my/our rights, title, benefits, choses in action, as well as any and all proceeds related to the Claim to NEW ENGLAND PROPERTY SERVICES GROUP, LLC.  The Irrevocable Assignment of Insurance Claim Benefits & Rights that follows, and that is hereby incorporated by reference hereto, will further elaborate on the rights, title, choses in actions and benefits assigned to NEW ENGLAND PROPERTY SERVICES GROUP, LLC.

     [Continued on next page]


MR

KR

**Page 1**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026



## DIRECTION TO PAY - CONTINUED

In the event the insurance or adjustment company, for whatever reason, mails the settlement check and/or insurance proceeds to me/us, I/we hereby agree to notify NEW ENGLAND PROPERTY SERVICES GROUP, LLC immediately and deliver the settlement check and/or proceeds to NEW ENGLAND PROPERTY SERVICES GROUP, LLC within twenty-four (24) hours of my/our receipt of said settlement check and/or insurance proceeds.

I/We recognize that NEPSG, LLC is **NOT** a Public Adjuster working on my/our behalf.  Rather, I/We understand that NEPSG, LLC is the assignee and equitable owner of this Claim and that NEPSG, LLC works on its own behalf.

| | | |
|---|---|---|
| **Michael R. Resnick** | **Owner** | Michael Resnick (Feb 22, 2025 09:24 EST) |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer**          **Signature Date** |
| **Kate C. Resnick** | **Owner** | Kate C. Resnick |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer**          **Signature Date** |

**New England Property Services Group, LLC**

**1822 North Main Street**

**Second Floor Annex, Suite 001**

**Fall River, MA 02720**

**Direct: (401) 419-1781**

**Email: Steven@NewEnglandPropertyServicesGroup.com**

Accepted By: Steven Ceceri (Feb 22, 2025 12:47 EST)

Steven Ceceri    Accepted Date

Chose-in-action Assignee:          NEW ENGLAND PROPERTY SERVICES GROUP, LLC

Chose-in-action Assignee Tax ID:    82-1729769

Chose-in-action Assignee Address:    1822 North Main Street, 2nd Fl. Annex, Suite 001 ~ Fall River, MA 02720

Chose-in-action Assignee Phone:    (401) 419-1781

Chose-in-action Assignee Contact:    Steven Ceceri  / Owner

**Page 2**


MR

KR

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS

### 1.  DESCRIPTION OF RIGHTS ASSIGNED

The undersigned Assignor(s) and the Assignee, New England Property Services Group, LLC, hereinafter referred to as "NEPSG", for and in consideration of the performance of the Scope of Work pursuant to the Home Improvement Contract (aka the Contract) already executed by Assignor(s) and NEPSG, as well as any change orders executed thereafter, and for other good and valuable consideration, the receipt and sufficiency whereof is hereby mutually acknowledged, and intending to be legally bound, does hereby irrevocably transfer, assign and set over to NEPSG, all of the lawful rights, title and interest of the Assignor(s) in any claim, proceeds, benefits, chose in action, and/or interest Assignor(s) has under any insurance policy, including any 3rd party insurance policy, regarding the loss and/or damage to the property located at **548 Buttonwoods Avenue Warwick, RI 02886**, relating to the certain insurance claim(s) officially reported and/or referenced to **Selective Insurance**, hereinafter referred to as "**Insurance Company**", with a **Date of Loss on or around October 29, 2017** as **Claim Number 21798287,** regarding **Policy Number H 2244717,** covering insurable property damage sustained during Assignor(s)' ownership thereof.

Assignor(s) hereby irrevocably assigns all Assignor(s)' lawful rights, title, benefits, and/or proceeds with regard to **Claim Number 21798287** to NEPSG.  If the Claim(s) and/or Policy Number(s) are not available upon the initial signing of this Assignment, said Claim(s) and/or Policy Number(s) shall be provided by the Assignor(s) to NEPSG, once said information is made available to the Assignor(s). Once Assignor(s) provides the said Claim and/or Policy Number(s) to NEPSG, said NEPSG may, in its sole discretion, update this Assignment through amendment, whereby said Claim and/or Policy Number(s) will be effectively added and incorporated hereto.  NEPSG may in its sole discretion contact Insurance Company to file the claim based on the event(s) that have already occurred making this a "Post-Loss Claim" and NEPSG shall use any information directly obtained from the Assignor(s) to include in the claim filing, including but not limited to the Date of Loss and circumstances surrounding the event that is the subject of this Claim.  Regardless of whether Assignor or NEPSG obtains any missing information related to the Claim and/or Policy Number(s), this Assignment shall not be considered void or voidable due to the fact that said Claim(s) and/or Policy Number(s) have not been included in this Assignment.

Assignor(s) intends to and does hereby irrevocably transfer, assign and set over all lawful rights, title and interest in any insurance proceeds, benefits, chose in action, cause of action, and/or claim, at

**Page 3**



MR

KR

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.



**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026

## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

law and/or equity, relating to the above referenced insurance claim(s), including, but not limited to, any and all claims Assignor(s) has or may have against any insurance company regarding the above referenced insurance claim(s), including, but not limited to, Assignor(s)' claim or claims for breach of contract, breach of good faith and fair dealing, and/or acts of bad faith, as well as any other violation(s) of or noncompliance with laws, regulations, and/or statutes that may be related to any issues involved in the resolution of the above referenced insurance claim(s).  Assignor(s) agrees and understands that this transfer and assignment of all lawful rights, title and interest in any insurance proceeds, chose in action, and/or claim(s) as referenced above related to the loss and/or damage to Assignor(s)' property referenced above to NEPSG constitutes a complete relinquishment of the Assignor(s)' rights and control over the relevant insurance proceeds, benefits, chose in action, and/or claim(s) and that the Assignor(s) will have no right to revoke and/or control the disposition thereof.

2.   **ASSIGNMENT OF POST-LOSS CLAIM(S) IS NOT AN ASSIGNMENT OF POLICY**

<u>**THE ASSIGNOR(S) RETAINS FULL OWNERSHIP OF ANY AND ALL ABOVE REFERENCED INSURANCE POLICY/POLICIES.**</u>  THIS CONTRACT IS <u>NOT</u> AN ASSIGNMENT OF THE ABOVE REFERENCED POLICY/POLICIES.  THE ASSIGNOR(S) IS HEREBY IRREVOCABLY ASSIGNING <u>ONLY</u> THE LAWFUL, POST-LOSS RIGHTS, INSURANCE PROCEEDS, BENEFITS, CHOSE IN ACTION, AND/OR CLAIMS AT LAW AND/OR EQUITY INVOLVING THE ABOVE REFERENCED INSURANCE CLAIM(S) AND/OR THE RESOLUTION OF SAID INSURANCE CLAIM(S).  THE ASSIGNOR RECOGNIZES THAT SUCH POST-LOSS ASSIGNMENTS ARE VALID, PURSUANT TO THE R.I. SUPREME COURT'S RULINGS IN <u>DEMARCO V. TRAVELERS INS. CO.</u>, 26 A.3d 585 (R.I. 2011), <u>SUMMIT INS. CO. V. STRICKLETT</u>, 199 A.3d 523 (R.I. 2019), AND R.I. GEN. LAWS. § 9-2-8.  ASSIGNOR RECOGNIZES THAT THIS ASSIGNMENT IS VALID PURSUANT TO THE ASSIGNMENT VALIDITY TEST DELINEATED IN <u>FLANDERS + MEDEIROS INC. V. BOGOSIAN</u>, 868 F. Supp. 412, 420 (D.R.I. 1994), SINCE THIS ASSIGNMENT CLEARLY EVIDENCES ASSIGNOR(S)' INTENT TO TRANSFER ALL ASSIGNOR(S)' RIGHTS, TITLE, AND INTEREST IN ANY INSURANCE PROCEEDS, BENEFITS, CHOSE IN ACTION, CAUSE OF ACTION, AND/OR CLAIM, AT LAW AND/OR EQUITY, RELATING TO THE ABOVE REFERENCED INSURANCE CLAIM(S) - A SUBJECT MATTER THAT IS READILY IDENTIFIABLE.  ASSIGNOR(S) UNDERSTANDS, PURSUANT TO <u>WEYBOSSET HILL INVESTMENTS, LLC V. ROSSI</u>, 857 A.2d 231, 240 (R.I. 2004) and <u>802 PARTNERS, LLC V. BEHAN BROS., INC.</u>, NOS. NM 10-526, NC 10-537 (R.I. Super. Nov. 20, 2013), THAT ONCE THIS ASSIGNMENT IS COMPLETE, NEPSG LEGALLY STEPS INTO THE SHOES OF THE ASSIGNOR(S) AND "CAN AVAIL ITSELF OF THE ASSIGNOR(S)' RIGHTS, NO MORE, NO LESS."  THE ASSIGNOR(S) RECOGNIZES THAT NEPSG HEREBY LEGALLY STANDS IN ASSIGNOR(S)' SHOES AND IS THE REAL PARTY IN INTEREST WITH REGARD TO THE ABOVE REFERENCED INSURANCE CLAIM(S), PURSUANT TO THE R.I. SUPREME COURT'S

**Page 4**


MR

KR
KR

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

RULING IN <u>DEMARCO V. TRAVELERS INS. CO.</u>, 26 A.3d 585 (R.I. 2011), R.I. GEN. LAWS. § 9-2-8, AND R.I. SUPER. CT. R. CIV. P. 17.

3.   **NEPSG IS NOT ACTING AS A PUBLIC ADJUSTER UNDER R.I. GEN. LAW § 27-10-1.1**

THE ASSIGNOR(S) FURTHER RECOGNIZES THAT <u>NEPSG IS NOT A PUBLIC ADJUSTER</u>, WHICH R.I. GEN. LAW § 27-10-1.1 DEFINES AS: (I) *"PUBLIC ADJUSTER" MEANS ANY PERSON WHO, FORCOMPENSATION OR ANY OTHER THING OF VALUE ON BEHALF OF THE INSURED: (1) ACTS OR AIDS, SOLELY IN RELATION TO FIRST-PARTY CLAIMS ARISING UNDER INSURANCE CONTRACTS THAT INSURE THE REAL OR PERSONAL PROPERTY OF THE INSURED, OTHER THAN AUTOMOBILE, ON BEHALF OF AN INSURED IN NEGOTIATING FOR, OR EFFECTING THE SETTLEMENT OF, A CLAIM FOR LOSS OR DAMAGE COVERED BY AN INSURANCE CONTRACT.* THE ASSIGNOR UNDERSTANDS THAT NEPSG IS NOT ASSIGNOR(S)' AGENT AND/OR FIDUCIARY AND DOES NOT ACT ON BEHALF OF THE ASSIGNOR(S) SINCE NEPSG HAS RECEIVED AN IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS AND IS NOW STANDING IN PLACE OF THE ASSIGNOR(S)**;** OR, IN OTHER WORDS, NEPSG HAS REPLACED THE ASSIGNOR WITH REGARD TO THE AFOREMENTIONED CLAIM(S) AND, ACCORDINGLY, NEPSG WILL BE SOLEY WORKING ON ITS OWN BEHALF.

The operative terms of this assignment contract have been expressly ruled as valid by the Rhode Island Superior Court for Providence County in <u>New England Property Services Group, LLC v. USAA Casualty Insurance Company</u>, CA No. PC-2024-00130 (R.I. Super. July 28, 2024), establishing NEPSG as the "equitable owner" of the claim/s assigned hereby, "with the same rights under the Policy to pursue recovery for the Claim as the Policyholders did prior to assignment."

4.   **INSURANCE COMPANY SHALL COMMUNICATE EXCLUSIVELY WITH NEPSG REGARDING THE ASSIGNED CLAIM(S)**

Assignor(s) hereby agrees to direct the **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since Assignor(s) has assigned all Assignor(s)' lawful rights, title and interest in any insurance proceeds, benefits, chose in action, cause of action, and/or claim, at law and/or equity, relating to the above referenced insurance claim(s) to NEPSG – with such assignment being expressly upheld and authorized by the R.I. Supreme Court's ruling in <u>Summit Ins. Co. v. Stricklett</u>, 199 A.3d 523 (R.I. 2019) and by statutory right pursuant to R.I. Gen. Laws § 9-2-8. Assignor(s) hereby further directs the **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since NEPSG is

**Page 5**


MR                                                                                                KR

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

now legally standing in the shoes of Assignor(s) as the real party in interest and Assignor(s) has no authority to control the disposition of the aforementioned claim(s).  In any future communications with **Insurance Company**, Assignor(s) hereby agrees to notify **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s).

Assignor(s) understands that any contact with Assignor(s) that is initiated by Assignor(s)' **Insurance Company** regarding the assigned claim(s) constitutes a potential interference with this Assignment and potentially tortious interference, in violation of the R.I. Supreme Court's ruling in Greensleeves, Inc. v. Smiley, 68 A.3d 425,430 (R.I. 2013).   Assignor(s) recognizes that any refusal, in whole or in part, by Assignor(s)' **Insurance Company** to accept the terms and/or validity of this lawful Assignment constitutes potential evidence of bad faith and/or breach of contract on the part of Assignor(s)' **Insurance Company**.  For these reasons, Assignor(s) agrees to notify NEPSG within twenty four (24) hours of any contact and/or communication involving Assignor(s) and Assignor(s)' **Insurance Company** that is initiated by Assignor(s)' **Insurance Company**, whether it be by phone, email, mail, text, in-person conversation, and/or any other type of communication.  Assignor(s) will then promptly provide a copy of said communication to NEPSG or, if said communication can't be copied, then Assignor(s) will promptly provide a description of said communication.  NEPSG will, in its sole discretion and at intervals during the claim process, keep Assignor(s) informed regarding the resolution and/or settlement of the above referenced insurance claim.

5.  **INSURANCE COMPANY HAS AN OBLIGATION TO NEPSG AS ASSIGNEE TO INTERACT WITH NEPSG ACCORDING TO ITS DUTY OF GOOD FAITH AND FAIR DEALING**

Assignor(s) hereby directs the **Insurance Company** to take notice that **Assignor(s) has hereby assigned the duty of good faith and fair dealing** that the **Insurance Company** owed to Assignor(s) prior to this Assignment and that such an assignment of the duty of good faith and fair dealing is expressly recognized as valid and enforceable by the R.I. Supreme Court in Summit Ins. Co. v. Stricklett, 199 A.3d 523 (R.I. 2019).  Assignor(s) hereby directs the **Insurance Company** to take notice that, pursuant to Asermely v. Allstate Ins. Co., 728 A.2d 461 (1999), this duty of good faith and fair dealing is a fiduciary obligation that includes a duty to consider seriously NEPSG's reasonable offer to settle within the policy limits and to refrain from acts that demonstrate greater concern for the **Insurance Company's** monetary interest than the financial risk attendant to NEPSG's situation.  Assignor(s) hereby directs the **Insurance Company** to take notice that, pursuant to said duty of good faith and fair dealing, the **Insurance Company** must communicate **EXCLUSIVELY** with NEPSG as the

**Page 6**


MR

KR
KR

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

**SOLE POINT OF CONTACT** and real party in interest regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s) and must list New England Property Services Group, LLC as payee on all payments made by the **Insurance Company** regarding the aforementioned claim(s), with said payments being made by <u>check</u> and mailed to NEPSG at 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, Massachusetts 02720.

### 6.  NEPSG'S RIGHT TO RECEIVE ALL INSURANCE CLAIM PROCEEDS AND BE NAMED AS A PAYEE

With regard to the processing and/or payment of any proceeds being issued by the **Insurance Company** related to the above referenced claim(s), so as not to delay said processing and/or payment, Assignor(s) hereby authorizes and directs NEPSG to endorse any and all documents related to the aforementioned claim(s), as if NEPSG were in fact Assignor(s), even if said documents pertain to Assignor(s).  Assignor(s) hereby directs the **Insurance Company** to release any and all information requested by NEPSG, NEPSG's representative, and/or NEPSG's attorney for the purpose of obtaining actual benefits to be paid by the **Insurance Company** for services rendered or to be rendered. Assignor(s) hereby directs the **Insurance Company** to list New England Property Services Group, LLC as payee on all payments made by the **Insurance Company** regarding the aforementioned claim(s) and directs that said payments being made by <u>check</u> and mailed to NEPSG at 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, Massachusetts 02720.

Assignor(s) understands that Assignor(s)' **Insurance Company** and/or a 3rd party insurance company may mistakenly or intentionally pay the insurance proceeds directly to the Assignor(s) and/or Assignor(s)' mortgage lender.  In such a circumstance where Assignor(s)' **Insurance Company** and/or a 3rd party insurance company mistakenly or intentionally pays the insurance proceeds directly to the Assignor(s) and/or Assignor(s)' mortgage lender, Assignor(s) will fully cooperate with NEPSG to have said insurance proceeds directed, made payable to, and/or released to NEPSG in full and without delay, as further described within the Direction of Payment section of the Contract.

### 7.  INSURER'S DUTY TO AFFIRM OR DENY COVERAGE PURSUANT 230-20-40 R.I. CODE R. § 2.7(A)

Assignor(s) recognizes that, pursuant 230-20-40 R.I. Code R. § 2.7(A), the **Insurance Company** has twenty-one (21) days from the date the assigned claim was filed to provide written notice to the first party claimant, either affirming or denying the above referenced claim.  If the **Insurance Company** provides said written notice to Assignor(s), then Assignor(s) agrees to promptly forward said written notice to NEPSG, since NEPSG is the real party in interest regarding the aforementioned claim(s).



MR

KR

**Page 7**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

**8. NEPSG'S RIGHT TO DEMAND APPRAISAL OR TO ENFORCE THE ARBITRATION PROCEDURE FOR THE ASSIGNED CLAIM(S) UNDER THE POLICY AND/OR UNDER R.I. GEN. LAW § 27-5-3**

Assignor(s) agrees to cooperate with NEPSG should NEPSG need to resort to legal proceedings to enforce its rights under this Assignment. Such cooperation shall include, but not be limited to, recognizing NEPSG's right to initiate any Appraisal and/or other legal and/or contractual proceedings involving the assigned insurance claim(s). Assignor(s) agrees to sign any additional documentation, including an engagement letter with legal counsel, which will allow NEPSG to pursue said Appraisal and/or other legal proceedings, at NEPSG's expense. Assignor(s) acknowledges that Assignor(s) may be named as a party along with NEPSG in said Appraisal and/or legal proceedings.

With regard to any Appraisal process involving the assigned insurance claim(s), Assignor(s) understands and recognizes that said Appraisal will be governed pursuant to Hahn v. Allstate Ins. Co., 15 A.3d 1026 (R.I. 2011) and that NEPSG shall demand and be entitled to an award of interest pursuant to R.I. Gen. Laws § 9-21-10 and the R.I. court rulings in: Mangiacapra v. Sentry Ins. Co., 517 A.2d 1041 (R.I. 1986), Waradzin v. Aetna Cas. and Sur. Co., 570 A.2d 649 (R.I. 1990), Union Mut. Fire Ins. Co. v. Pate, C.A. No. PC 2013-1620 (R.I. Super. Aug. 2, 2016), Murino v. Progressive Northern Ins. Co., 785 A.2d 557 (R.I. 2001) and Metro. Prop. & Cas. Ins. Co. v. Barry, 892 A.2d 915 (R.I. 2006). Assignor(s) agrees to never knowingly interfere, in any way, with NEPSG's right to such an award of interest.

Where there may be any confusion to the use of the words "Arbitration" or "Appraisal", NEPSG believes that the language within the four-corners of the insurance agreement shall provide the clarification. Unless otherwise provided to NEPSG in writing by the **Insurance Company** prior to NEPSG submitting a Demand For Appraisal to the **Insurance Company**, NEPSG shall rely fully upon the plain and ordinary meaning of the words "Arbitration" or "Appraisal", both of which NEPSG believes may be utilized as an alternate dispute resolution mechanism. More particularly, NEPSG believes that if NEPSG desires to intentionally invoke the "Arbitration" process rather than the "Appraisal" process, NEPSG will follow the procedures set forth under **R.I. GEN. LAW § 10-3-1 - ARBITRATION.**

**9. SAVINGS CLAUSE**

If any section, paragraph, term, or set of terms of this Contract is to any extent illegal, otherwise invalid, or incapable of being legally enforced, such section, paragraph, term, or set of terms shall be excluded to the extent of such invalidity or unenforceability; every other section, paragraph, term, or set of terms contained herein shall remain in full force and effect; and, to the extent permitted and possible, the invalid or unenforceable section, paragraph, term, or set of terms shall be



MR

KR

**Page 8**

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex, Suite 001

Fall River, Massachusetts 02720

**Cell:** (401) 419-1781 **Fax:** (401) 566-4423

**Email:** Steven@NewEnglandPropertyServicesGroup.com

**Website:** www.NewEnglandPropertyServicesGroup.com

*MA HIC Reg # 186957 - Expiration February 7, 2027

*RI Contractor Reg # 41504 - Expiration October 1, 2025

*CT HIC Reg # 0650997 - Expiration March 31, 2026



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

deemed replaced by a term that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable section, paragraph, term, or set of terms.

### 10. ACKNOWLEDGEMENT OF IRREVOCABLE ASSIGNMENT TO NEPSG

IN WITNESS WHEREOF, the undersigned(s) has caused this transfer and irrevocable assignment of any and all lawful insurance proceeds, chose in action, and/or claims regarding the **Insurance Company** insurance claim officially reported and referenced by **Claim Number 21798287,** covering insurable property located at **548 Buttonwoods Avenue Warwick, RI 02886**, to be duly executed this **22nd Day of February, 2025**. This Assignment and Contract, if signed electronically as opposed to manually, remains valid and enforceable pursuant to R.I. Gen. Laws § 42-127-1.7, its successors, and/or the common law of Rhode Island.

**ASSIGNOR(S):**                                      **ASSIGNEE:**    New England Property
                                                                                      Services Group, LLC

Michael Resnick (Feb 22, 2025 09:24 EST)          Steven Ceceri (Feb 22, 2025 12:47 EST)

Signature                              Dated          Signature                              Dated

Michael R. Resnick                                       Steven Ceceri

Printed Name                                               Printed Name

**ASSIGNOR(S):**

Kate C. Resnick

Signature                              Dated

Kate C. Resnick

Printed Name



Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# EXHIBIT 3

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

Case 1:25-cv-00204-MRD-PAS    Document 1-2    Filed 05/09/25    Page 93 of 108 PageID #: 100

## Steven Ceceri

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Monday, February 24, 2025 8:18 AM |
| **To:** | 'vincent.disimone@selective.com' |
| **Cc:** | Cameryn Valcourt; 'Ed Ladouceur' |
| **Subject:** | Selective Claim Number 21798287 - 548 Buttonwoods Avenue Warwick, RI - Demand For Appraisal |
| **Attachments:** | Resnick - DTP & AOB SIGNED - 2-22-2025.pdf |

Good Morning, **Vincent & Selective Insurance**,

Please allow this email to service the following purposes relative to **Selective Insurance Claim Number 21798287** for the insured location of **548 Buttonwoods Avenue Warwick, RI**:

1. Initial notification to **Selective** that New England Property Services Group, LLC (NEPSG) has been become the Legal Assignee of **Selective Insurance Claim Number 21798287**, whereby NEPSG is attaching the Direction to Pay and Assignment of Claim Documentation to confirm this Assignment of Claim.

2. NEPSG, as the Legal Assignee of **Selective Insurance Claim Number 21798287**, does hereby dispute the "Amount of Loss" that **Selective** provided to the **Policyholders, Michael & Kate Resnick** through an Approved Estimate on or around January 2, 2019, to which at present, NEPSG does have a physical copy of.  It is NEPSG's opinion based on the communication with the Policyholder and the physical Estimate that **Selective** drastically undervalued the Claim due to an incomplete scope of work assessment.  In disputing the "Amount of Loss", NEPSG believes that the assessment of the Roof was improper and inadequate, which includes not including the Shed, which from information and documentation on file, had the same 3-Tab Shingle that was on the house and presently, still remains on the Shed.  Additionally, NEPSG believes that the attic space must be included as water did not pass from the roof and bypass the attic, before causing damage to multiple areas of the ceilings as **Selective** confirmed in the Estimate provide on or around January 2, 2019.  Lastly, NEPSG believes the Texture 111 Siding was damaged, as water appears to have traveled behind the Panels in at least 2 areas (front and rear) causing a physical swelling of the Panels which presently do not allow the Panels to lay flush against the exterior wall.  Based on the above noted details, NEPSG does hereby Demand Appraisal of the "Amount of Loss" in accordance with the Policy Language and per Rhode Island General Laws.  NEPSG's Appraiser contact information is as follows:

   **NEPSG Appraiser:**

   Ed Ladouceur
   Ed.LadouceurConsulting@gmail.com
   401-447-7181

3. **NEPSG requests the following documentation from Homesite regarding Selective Claim Number 7703184823-1:**

   1) Copy of Estimates that were generated by and/or on behalf of **Selective**.
   2) Copy of all Reports completed by or on behalf of **Selective**, including but not limited to Reports consisting of Photographs of the Interior and/or Interior, which should include the original image files (i.e. JPG's or PNG, images) as well as reports providing Measurements that were used for the estimated items included in the Estimate(s) for the Exterior of the property.

1

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

3) Documentation to show how "Depreciation" was calculated (if applicable to the Approved Estimates) and more specifically, what tool or expertise was used to determine the "Age" of the damaged building components, including, but not limited to the roof or siding materials.

4) Copies of all Payments issued (front and back of checks). If any payment has not been processed, please immediately place a stop payment on that payment or payment and reissue the payment listing NEPSG as a Payee.

5) Copies of the Rhode Island Insurance Adjusters Licenses for any Adjuster that worked as an Employee or Independently in any Capacity on behalf of **Selective** (or MetLife), including but not limited to **Vincent Disimone**, which "MUST" show the date that each of these individuals was first Licensed as an Insurance Adjuster in the State of Rhode Island. As you are aware, Rhode Island requires that anyone engaging in Insurance Adjusting activities first become Licensed as an Insurance Adjuster in the State of Rhode Island.

6) Certified Copy of the Insurance Policy (**Policy Number H 2244717**).

7) **Selective** understanding of Rhode Island Law regarding the Statute of Limitations for claims that **"DO NOT"** involve the Perils of either Fire or Lightning. When replying, please provide a direct reference within the Certified Copy of the Insurance Policy to which was requested herein, to where we can locate the noted time limitation for claims that do not involve either Fire or Lightning, as this Claim.

NEPSG, in Good Faith and Fair Dealing, may consider expediting the resolution of the "Amount of Loss" through a confidential settlement agreement based on a scope of work that NEPSG will be developing over the upcoming days / weeks. Having said that, if **Selective** is interested in resolving the dispute over the "Amount of Loss" in this manner consistent with what NEPSG believes is in Good Faith and Fair Dealing, which from the perspective of NEPSG may include resolving "ALL" issues related to the investigation, negotiation, and settlement efforts put forth by Selective to date, NEPSG will be willing to entertain such a discussion. Regardless of this potential settlement discussion, NEPSG still is invoking the Demand For Appraisal and as such, **Selective** has 20 Calendar Days to provide NEPSG with the full contact information of **Selective's Appraiser**. The 20 Calendar Day timeframe is noted within **Policy Number H 2244717** as well as in Rhode Island General Laws 27-5-3. As such, **Selective** must provide the Appraiser information to NEPSG on or before February 16, 2025.

NEPSG awaits your prompt response to this email. Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

2

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# EXHIBIT 4

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082586
Reviewer: Lindsay Z.

**SELECTIVE**
INSURANCE®

Michael Restucci
Selective Insurance Company of America
Mailing address for correspondence:
Po Box 7264
London, KY 40742
Phone: 973-948-9273
Fax: 877-233-0917
Michael.Restucci@selective.com

March 4, 2025

New England Property Services Group LLC
1822 North Main Street
Second Floor Annex, Suite 001
Fall River, MA 02720

| Re: | Policyholder: | Michael Resnick And Kate Resnick |
|---|---|---|
| | Claim No.: | 21798287 |
| | Policy No.: | H2244717 |
| | Insurer: | Selective Insurance Company of South Carolina |
| | Date of Loss: | October 29, 2017 |

Dear  New England Property Services Group LLC:

I am a Property Claims Specialist employed by Selective Insurance Company of America. I am responsible for handling this matter on behalf of Selective Insurance Company of South Carolina (Selective), insurer for Michael Resnick and Kate Resnick.

On February 24, 2025, we received your correspondence dated February 22, 2025 indicating your representation of Michael Resnick and Kate Resnick in this matter and demand for an appraisal of damages related to the above referenced claim.

This claim was reported to our office October 31, 2017 that high winds and rain caused water to damage ceilings in the hallway, bathroom, and Kitchen of  the home at 548 Buttonwoods Avenue, Warwick, Rhode Island 02886. Mr. and Mrs. Resnick accepted a referral from our Contractor Connection vendor program and a payment was issued for the interior water damage on December 7, 2017, in the amount of $1,509.15 that reflected their $1,000.00 policy deductible.

On April 10, 2018, Mrs. Resnick contacted our office regarding wind damage to the roof of the home.  An investigation was conducted with Mr. and Mrs. Resnick's public adjuster, Gary Gallo with G.F. Gallow & Associates, and on January 16, 2019, they agreed to a settlement in the amount of $16,036.04 and submitted an executed Statement of Loss.

On May 13, 2019, we received confirmation that the roof on the home had been replaced and we issued the remaining balance of the full Replacement Cost Value of the agreed upon damages to their home. We have not received any correspondence in reference to this matter in over five years, therefore, we consider this matter closed and decline your demand for appraisal.

This letter is drafted with full reservation of rights and is not intended to be, nor should be construed as, a waiver of any terms, conditions, limitations or provisions of the insuring contract with Selective under policy H2244717, which reserves all of its rights and defenses under and pursuant to the policy of insurance in force at the time of

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z

the loss upon which claim has been made, and under and pursuant to the laws and regulations of the state of Rhode Island.

If there are new damages that occurred since the resolution of this claim, please submit a new loss report so we may complete a thorough investigation.

Should you have any questions or need additional information, please contact me at 973-948-9273 or Michael.Restucci@selective.com.



Sincerely,

Michael Restucci
Property Claims Specialist

cc: Michael Resnick and Kate Resnick
    John Andrade Ins Agcy Inc

Selective Insurance Company of America is the servicing carrier and handles the claims for all its affiliate insurers.





Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

# EXHIBIT 5

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

## Steven Ceceri

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Monday, March 24, 2025 9:03 AM |
| **To:** | Michael Restucci |
| **Cc:** | Nicole Inchaustegui; Nicholas Elias |
| **Subject:** | RE: Property Selective Communication 21798287 |

| **Tracking:** | Recipient | Delivery |
|---|---|---|
| | Michael Restucci | |
| | Nicole Inchaustegui | Delivered: 3/24/2025 9:03 AM |
| | Nicholas Elias | Delivered: 3/24/2025 9:03 AM |

Good Morning, Michael,

In my review of the documentation requested and the documentation "not provided", I would like to request a Certified Copy of the Insurance Policy.  Please advise if you can expedite this request.  Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

---

**From:** Steven Ceceri
**Sent:** Thursday, March 6, 2025 12:54 PM
**To:** Michael Restucci <Michael.Restucci@selective.com>
**Cc:** Nicole Inchaustegui <nicole@newenglandpropertyservicesgroup.com>
**Subject:** RE: Property Selective Communication 21798287

Hi Michael,

Thank you for confirming this with me! Enjoy the rest of your day!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

---

**From:** Michael Restucci <Michael.Restucci@selective.com>
**Sent:** Thursday, March 6, 2025 12:42 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Cc:** Nicole Inchaustegui <nicole@newenglandpropertyservicesgroup.com>
**Subject:** RE: Property Selective Communication 21798287

Steven,

1

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

The statute of limitations for the state of Rhode Island is 10 years.

Regards,

Michael Restucci, AIC
(*he/him/his*)
Property Claim Specialist-Domiciled in Connecticut
Selective Insurance Company of America
Phone (973) 948-9273
*Michael.restucci@selective.com*

CONFIDENTIAL, PROPRIETARY, UNPUBLISHED PROPERTY OF SELECTIVE INSURANCE COMPANY OF AMERICA
USE, DUPLICATION AND DISTRIBUTION RIGHTS LIMITED SOLELY TO AUTHORIZED RECIPIENTS
@2025 Selective Insurance Company of America



**From:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Sent:** Tuesday, March 4, 2025 4:24 PM
**To:** Michael Restucci <Michael.Restucci@selective.com>
**Cc:** Nicole Inchaustegui <nicole@newenglandpropertyservicesgroup.com>
**Subject:** RE: Property Selective Communication 21798287

You don't often get email from steven@newenglandpropertyservicesgroup.com. Learn why this is important

**External Email – Use Caution**

Good Afternoon, Michael,

I am in receipt of your letter, so thank you for replying!

With that said, please confirm what Selective Insurance believes is the Rhode Island Statute of Limitations for filing a Suit against Selective Insurance, based on a Claimed Loss for Damages caused by Water.

Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

2

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/11/2025 11:30 AM
Envelope: 5082546
Reviewer: Lindsay Z.

**From:** michael.restucci@selective.com <michael.restucci@selective.com>
**Sent:** Tuesday, March 4, 2025 4:10 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Subject:** Property Selective Communication 21798287

Please see attached correspondence
Thank You
Michael Restucci

3



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>KM-2025-0445 |
| **Plaintiff**<br>New England Property Services Group<br> v.<br>Selective Insurance Company of South Carolina<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Nicholas  Elias<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>1822 North Main Street<br>Second floor Annex Suite 001<br>Fall River MA  02720 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI  02886<br>(401) 822-6900 | **Address of the Defendant**<br>900 E. 96th Street<br>Suite 400<br>Indianapolis IN  46240 |

**TO THE DEFENDANT, Selective Insurance Company of South Carolina:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 4/18/2025. | /s/ Danielle Keegan<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff** | **Civil Action File Number** |
|---|---|
| New England Property Services Group | KM-2025-0445 |
| v. | |
| Selective Insurance Company of South Carolina | |
| **Defendant** | |

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Selective Insurance Company of South Carolina, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
   Name of person of suitable age and discretion _____
   Address of dwelling house or usual place of abode _____
   _____
   Age _____
   Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
   _____

☐ With a guardian or conservator of the Defendant.
   Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
   Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
  Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
  Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
  Name of authorized agent _____
  If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

  _____

☐ I was unable to make service after the following reasonable attempts: _____

_____

SERVICE DATE: _____/_____/_____          SERVICE FEE $_____
              Month    Day     Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE


SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.


_____

 Signature

State of _____
County of _____

    On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

                              Notary Public: _____
                              My commission expires: _____
                              Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised November 2022)

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 4/18/2025 3:58 PM
Envelope: 5092464
Reviewer: Lindsay Z.

# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT
## OMNIBUS CALENDAR ASSIGNMENT FORM

| ☐ **Providence/Bristol County**   ☐ **Kent County**    ☐ **Washington County**   ☐ **Newport County** | |
|---|---|
| | CASE NUMBER |
| VS. | |

### CALENDAR TYPE MUST BE SELECTED FOR SCHEDULING PURPOSES
☐ FORMAL SPECIAL CAUSE CALENDAR   ☐ BUSINESS CALENDAR   ☐ DISPOSITIVE MOTION CALENDAR

### FORMAL SPECIAL CAUSE AND BUSINESS CALENDAR

| | |
|---|---|
| ☐ AGENCY APPEAL | ☐ MOTION FOR PROTECTIVE ORDER |
| ☐ ASSESSMENT OF DAMAGES | ☐ MOTION TO RECONSIDER |
| ☐ APPOINTMENT OF A SPECIAL MASTER | ☐ ORAL PROOF OF CLAIM |
| ☐ CONFIRM ARBITRATION | ☐ PETITION TO ALLOW SECURED CLAIM |
| ☐ DECLARATORY JUDGMENT | ☐ PETITION TO APPOINT TEMPORARY RECEIVER |
| ☐ ENTRY OF JUDGMENT | ☐ PROOF OF CLAIM |
| ☐ EVIDENTIARY HEARING | ☐ PETITION TO ENFORCE |
| ☐ FIRST AND FINAL REPORT | ☐ PETITION FOR INSTRUCTIONS |
| ☐ FORECLOSURE OF RIGHT OF REDEMPTION | ☐ PRELIMINARY INJUNCTION |
| ☐ FRIENDLY SUIT | ☐ APPOINTMENT OF PERMANENT SPECIAL MASTER |
| ☐ APPOINTMENT OF PERMANENT RECEIVER | ☐ PETITION TO RECLAIM |
| ☐ MOTION TO ATTACH | ☐ PARTITION PROCEEDINGS |
| ☐ MOTION FOR ATTORNEYS FEES | ☐ PETITION TO SELL |
| ☐ MOTION TO COMPEL RECEIVER | ☐ RECEIVERSHIP PROCEEDINGS |
| ☐ MOTION TO DEFAULT | ☐ SHOW CAUSE HEARING |
| ☐ MOTION FOR ENTRY OF FINAL JUDGMENT | ☐ SUPPLEMENTARY PROCEEDINGS |
| ☐ MECHANIC'S LIEN | ☐ TITLE PROCEEDINGS |
| ☐ MOTION FOR APPROVAL | ☐ TEMPORARY RESTRAINING ORDER |
| ☐ MANDATORY INJUNCTION | ☐ TRUSTEE PROCEEDINGS |
| ☐ MOTION TO ADJUDGE IN CONTEMPT | ☐ VACATE ARBITRATION |
| ☐ OTHER FORMAL MATTER (EXPLAIN) _____ _____ | ☐ WRIT OF MANDAMUS |
| ☐ OTHER BUSINESS MATTER (EXPLAIN) _____ _____ | ☐ WRIT OF REPLEVIN |

**If you require witnesses, state the estimated time frame of said hearing and attach a witness list and expected testimony to this form.**

### DISPOSITIVE MOTION CALENDAR

| | |
|---|---|
| ☐ MOTION TO DISMISS, UNDER RULE 12 | ☐ MOTION FOR PARTIAL SUMMARY JUDGMENT |
| ☐ MOTION FOR ENTRY OF JUDGMENT ON PLEADINGS | ☐ MOTION FOR SUMMARY JUDGMENT |
| ☐ OTHER DISPOSITIVE MOTION: (EXPLAIN) _____ _____ | /s/ Rachel-Lyn Longo |

| | | |
|---|---|---|
| **HEARING DATE**: | **APPROVED BY**: | Deputy I Clerk |

**Failure to fill out this form properly may result in your hearing date not being approved.**

| Signature of Attorney or Self-represented Litigant /s/ _____ | Address: |
|---|---|

| Rhode Island Bar Number: | Office Telephone Number: | Date: |
|---|---|---|

Superior-37 (revised May 2023)

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 5/1/2025 9:55 AM
Envelope: 5107947
Reviewer: Tracy K.

Case 1:25-cv-00204-MRD-PAS     Document 1-2     Filed 05/09/25     Page 106 of 108 PageID #: 113



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>KM-2025-0445 |
| **Plaintiff**<br>New England Property Services Group<br>v.<br>Selective Insurance Company of South Carolina<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Nicholas Elias<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>1822 North Main Street<br>Second floor Annex Suite 001<br>Fall River MA 02720 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI 02886<br>(401) 822-6900 | **Address of the Defendant**<br>900 E. 96th Street<br>Suite 400<br>Indianapolis IN 46240 |

**TO THE DEFENDANT, Selective Insurance Company of South Carolina:** _c/o: d5 the corp._

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 4/18/2025. | /s/ Danielle Keegan<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 5/1/2025 9:55 AM
Envelope: 5107947
Reviewer: Tracy K.

Case 1:25-cv-00204-MRD-PAS    Document 1-2    Filed 05/09/25    Page 107 of 108 PageID #: 114



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| **Plaintiff** | **Civil Action File Number** |
|---|---|
| New England Property Services Group | KM-2025-0445 |
| v. | |
| Selective Insurance Company of South Carolina | |
| **Defendant** | |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Selective Insurance Company of South Carolina, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
   Name of person of suitable age and discretion _____
   Address of dwelling house or usual place of abode _____
   _____
   Age _____
   Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
   _____

☐ With a guardian or conservator of the Defendant.
   Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
   Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised November 2022)

Case Number: KM-2025-0445
Filed in Kent County Superior Court
Submitted: 5/1/2025 9:55 AM
Envelope: 5107947
Reviewer: Tracy K.



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____

☑ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _RI Ins. Comm. office authorized to accept @ 1511 Pontiac Ave, Cranston RI_
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____
_____

| | |
|---|---|
| SERVICE DATE: __4__ / __22__ / __25__ <br> Month Day Year @ 11:20am | SERVICE FEE $ __45__ |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

**Kyle R. Norigian**
**Constable #6137**

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

Signature

State of _____

County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____

My commission expires: _____

Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised November 2022)