UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NEW ENGLAND PROPERTY SERVICES
GROUP, LLC,

      Petitioner,

      v.

SELECTIVE INSURANCE COMPANY OF
SOUTH CAROLINA,

      Respondent.

:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. 25-00204-MRD

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On January 17, 2019, homeowners Kate and Michael Resnick ("the Resnicks") entered into an agreement with their insurance company, Respondent Selective Insurance Company of South Carolina ("Selective"), regarding the amount of loss in connection with a 2017 wind/water damage insurance claim. More than five years later, Petitioner New England Property Services Group, LLC, ("NEPSG") procured the Resnicks' signatures on a form entitled "Direction to Pay and Irrevocable Assignment of Insurance Claims Benefits & Rights" ("Assignment") and presented a demand to Selective for an appraisal in connection with the 2017 loss. NEPSG's demand for appraisal was asserted pursuant to R.I. Gen. Laws § 27-5-3 and the terms of the applicable insurance policy ("Insurance Policy"). Because the Insurance Policy provides for such an appraisal proceeding only if the insured and insurer "fail to agree on the amount of loss," ECF No. 20-2 at 22, Selective timely declined NEPSG's demand based on the Resnicks having reached agreement with Selective regarding the amount of the loss, as well as based on the passage of time with no further communication regarding the claim for more than five years.

Invoking the Rhode Island Arbitration Act, R.I. Gen. Laws § 10-3-1, *et seq*, and alleging that "[it] and Selective disagreed over the amount of loss," ECF No. 1-2 at 3 (capitals omitted), NEPSG responded by filing its Petition to compel appraisal proceedings. Following a procedural hearing during which the parties concurred that the Court should proceed based on dueling motions for summary judgment, the Court set a briefing schedule and then held a hearing on the merits. With no material facts in dispute, and based on the analysis that follows, I recommend that NEPSG's motion for summary judgment (ECF No. 19) be denied and Selective's cross-motion for summary judgment (ECF No. 23) be granted.

I.      **BACKGROUND**

A.      **Undisputed Facts**[1]

As NEPSG alleges in its Petition, Selective is an Indiana insurance entity that has been "properly registered" to transact business in Rhode Island. ECF Nos. 1-2 ¶ 2; 9 ¶ 2. Selective's license to conduct insurance business in Rhode Island has been continuously in place since 1998 pursuant to R.I. Gen. Laws § 27-2-11. ECF No. 30 at 2 & n.2. In 2017, Selective entered into a contract with the Resnicks to provide insurance coverage for their home. SOF ¶¶ 1-2. The Resnicks timely reported to Selective a claim of loss, based on wind/water property damage, that occurred on October 29, 2017. SOF ¶¶ 6-7. In December 2017, Selective investigated the claim and issued a payment of $1,509.15 for the damage. SOF ¶ 8; ECF No. 10 ¶ 5. In April 2018, the

---

[1] These facts are based on the parties' Statements of Facts, designated as "SOF ¶ __" which are set out in ECF Nos. 22 and 25. Except for one, all facts relied on by the Court are undisputed, albeit some with argument that the Court has considered. One ostensibly disputed fact proffered by Selective is based on NEPSG's failure in its Assignment and demand for appraisal to specify what it claims is the amount of loss. SOF ¶ 35. Although NEPSG purported to dispute this fact, NEPSG conceded at the hearing that this proposition is not factually disputed in that it has never stated what it contends is the amount of loss, despite its assertion that there is a disagreement concerning the amount of loss, leaving only a legal argument that it was not required to state in the Assignment the alleged loss that formed the basis for its claim of a disagreement. See ECF No. 28 at 6-7. Accordingly, the Court has treated SOF ¶ 35 as factually undisputed.

Resnicks contacted Selective claiming additional damage to the roof in connection with the same claim.  SOF ¶ 9.  By this time, the Resnicks had retained a licensed Rhode Island public insurance adjuster[2] to assist them with the claim.  SOF ¶ 26.  Following further investigation, on December 11, 2018, Selective notified the Resnicks that, after deducting depreciation and accounting for the prior payment, the Actual Cash Value of the loss was $1,127.53 and issued a check for that amount.  SOF ¶ 27.  In response, the Resnicks disagreed; acting through their public adjuster, they disputed Selective's loss valuation and proceeded to negotiate an adjustment to Selective's loss settlement payment.  SOF ¶ 29.

On January 16, 2019, acting with and through their public adjuster, the Resnicks executed and delivered to Selective a "Statement of Loss," asserting that the "Total Loss" amount of their claim is $16,036.04, and that the "Total Recoverable Depreciation" is $6,913.83.  SOF ¶ 30; ECF No. 26-4 at 3.  On January 17, 2019, Selective advised that "<u>we have agreed</u>" on the amount of the loss as stated in the Resnicks' Statement of Loss.[3]  SOF ¶ 31 (emphasis added).  Selective paid consistent with this agreement, subject to the Insurance Policy requirement that payment of depreciation would be held back until after confirmation that the repairs were completed.  SOF ¶¶ 32-33.  On May 13, 2019, Selective received confirmation that the roof repairs had been completed and issued a check for the agreed-on depreciation hold-back of $6,913.83, which was cashed on June 3, 2019.  SOF ¶¶ 32-33; ECF Nos. 26-5.  An email (authenticated by Declaration

---

[2] Pursuant to R.I. Gen. Laws § 27-10-1, *et seq.*, and 230 R.I. Code R. § 20-50-4, *et seq.*, a "public adjuster" is a person licensed by the Rhode Island Department of Business Regulation to act as an insurance claim adjuster engaged by insureds to investigate, negotiate and/or settle insurance claims on their behalf.  As its Assignment form states, NEPSG is not a licensed public adjuster.  ECF No. 20-1 at 3.

[3] Both NEPSG and Selective supplied the Court with an authenticated copy of this pivotal communication. NEPSG's supporting Declaration authenticates a true copy of it as a Selective communication received by NEPSG from the Resnicks and admits that it constitutes "Selective's valuation and settlement position concerning the amount of loss for the claim," ECF No. 20 ¶¶ 8-9, while Selective's Declaration proffers it as an authentic business record, ECF No. 10 ¶ 9.

proffered by Selective) written that day by Kate Resnick to the Resnicks' public adjuster confirms that this constituted the "final paperwork" related to the loss. ECF No. 26-5 at 2 (emphasis added). Once the final payment was received, Selective never heard from the Resnicks or their public adjuster again regarding this claim. SOF ¶ 34.

More than five years later, on February 22, 2025, the Resnicks executed the Assignment, conveying their rights in the claim to NEPSG. SOF ¶¶ 15-16. Two days later, NPSEG contacted Selective, notified it that NEPSG had become the legal assignee of the claim pursuant to the Assignment, advised that it "dispute[d] the 'Amount of Loss' that **Selective** provided to [**the Resnicks**]" and demanded appraisal pursuant to the Insurance Policy. SOF ¶ 17; ECF No. 20-4 at 2 (emphasis in original).[4] Asserting that there is an unspecified-as-to-amount dispute regarding the "Amount of Loss," NEPSG demanded that Selective nominate an appraiser within twenty days and named its own appraiser; NEPSG also offered Selective a "confidential settlement agreement" to resolve the dispute without the expense of appraisal. SOF ¶¶ 17-19, 35; ECF No. 20-4 at 2-3. NEPSG supports its allegation that there is a failure to agree regarding the amount of the Resnicks' loss with the vague and conclusory statement in the Declaration of Steven Ceceri,[5] who is the sole member and manager of NEPSG, that "[a]fter viewing the

---

[4] New England Prop. Servs. Grp., LLC v. USAA Cas. Ins. Co., No. PC-2023-00130, 2023 WL 4991996, at *6 (R.I. Super. Ct. July 28, 2023) (insureds may assign claim under insurance policy to NEPSG).

[5] During the hearing, the Court questioned NEPSG regarding the reliability of Mr. Ceceri's averment in light of the Rhode Island Supreme Court's decision in Vermont Mut. Ins. Co. v. New England Prop. Servs. Grp., LLC, 331 A.3d 993 (R.I. 2025). In Vermont Mut. Ins. Co., the Rhode Island Supreme Court vacated an insurance award based on an appraisal tainted by partiality because this declarant – Steven Ceceri – acted as NEPSG's nominated appraiser. Id. at 1001-03. Because, as discussed infra, I find that the averment in Mr. Ceceri's Declaration that "NEPSG determined that there was a genuine disagreement concerning the amount of loss" is both legally insufficient and untimely, there is no need for the Court to proceed to summary trial to consider its credibility. ECF No. 20 ¶ 10; see R.I. Gen. Laws § 10-3-5 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the arbitration agreement is in issue, the court shall proceed summarily to the trial thereof."). My recommendations are not based on a credibility assessment of Mr. Ceceri's averment.

Property and Selective's valuation of the loss, NEPSG determined that there was a genuine disagreement concerning the amount of loss."[6]  ECF No. 20 ¶¶ 2, 10.

Selective declined NEPSG's demand for appraisal for two reasons.  First, Selective refused because the Resnicks "agreed to a settlement . . . and had submitted an executed Statement of Loss" and Selective paid based on the "agreed upon damages."  SOF ¶¶ 21-22, 36; ECF No. 20-5 at 2.  Second, Selective relied on the passage of more than five years with no "correspondence in reference to this matter," until 2025, when NEPSG formed what it describes as its "determin[ation]" that there was a genuine disagreement concerning the amount of loss and demanded arbitration.  SOF ¶¶ 21-22, 36; ECF Nos. 20 ¶ 10; 20-5 at 2.

**B.  Pertinent Insurance Policy Provisions**

As pertinent to this case, it is undisputed that the Insurance Policy issued by Selective to the Resnicks includes the following provisions:

**Section I – Conditions**

. . .

**B.  Duties After Loss**

. . .

1.  Give prompt notice to us or our agent;

. . .

4.  Protect the property from further damage.  If repairs to the property are required, you must:

---

[6] The Court confirmed during the hearing that NEPSG's Assignment states that the "[a]signor(s) hereby agree[] to direct [Selective] to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT**," which barred Selective from communicating with its insureds about the *bona fides* of NEPSG's claim of a "disagreement" or about anything else pertaining to the Assignment.  ECF No. 20-1 at 6 (emphasis in original).  Further, at least once, NEPSG has sued an insurer (unsuccessfully) for tortious interference based on its having contacted its insureds regarding the settlement of a claim assigned to NEPSG.  New England Prop. Servs. Grp., LLC v. NGM Ins. Co., 329 A.3d 889, 896-97 (R.I. 2025).

    a.      Make reasonable and necessary repairs to protect the property;

. . .

5.  Cooperate with us in the investigation of a claim[.]

. . .

**C.**    **Loss Settlement**

. . .

[2] a.   [W]e will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

. . .

(3)       The necessary amount actually spent to repair or replace the damaged building.

. . .

e.      You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis.  You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

. . .

**E.**    **Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire with 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.

. . .

**I.**    **Loss Payment**

6

> We will adjust all losses with you.  . . .  Loss will be payable 60 days after we receive your proof of loss and:
>
> 1.   Reach an agreement with you[.]

ECF No. 20-2 at 20-23 (capitals omitted).

## II.    STANDARD OF REVIEW

Under Rhode Island law, the insurance appraisal process sought by NEPSG is "a form of arbitration" governed by the Rhode Island Arbitration Act, R.I. Gen. Laws § 10-3-1, *et seq*.  New England Prop. Servs. Grp., LLC v. NGM Ins. Co., 329 A.3d 889, 893 (R.I. 2025); see B.R.S. Real Est., Inc. v. Certain Underwriters at Lloyd's, London, 110 F.4th 442, 448 n.1 (1st Cir. 2024).  Where, as here, the material facts are undisputed, the determination whether to order the parties to proceed with arbitration through the appraisal process in the Insurance Policy may be made in reliance on cross motions for summary judgment.  See New England Prop. Servs. Grp., LLC, 329 A.3d at 891-97 (NEPSG's claim under Arbitration Act properly determined by summary judgment in favor of insurer); Machado v. Narragansett Bay Ins. Co., 252 A.3d 1206, 1208-09 (R.I. 2021) (homeowners' demand for appraisal to determine amount of insurance loss properly determined by summary judgment in favor of insurer based on homeowner's unreasonable delay, relieving insurer of contractual duty).  If there is a material factual dispute regarding whether the insurance claim is subject to the appraisal process, the Rhode Island Arbitration Act requires that the Court must summarily conduct a trial on the factual dispute before ordering arbitration.  R.I. Gen. Laws § 10-3-5.

When a demand for arbitration is presented to the Court via a motion for summary judgment, the Court must grant the motion if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

7

56(a). An issue or dispute is considered genuine if the "evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal quotation marks omitted). Facts are material if they have "the potential to affect the outcome of the suit under the applicable law." Id. (internal quotation marks omitted). The nonmovant may not rely on conclusory allegations, improbable inferences, acrimonious invective, or speculation, but must produce specific facts to support their claims or defenses. Mello v. Arruda, C.A. No. 23-479JJM, 2025 WL 2607153, at *2 (D.R.I. Sept. 9, 2025), adopted, 2025 WL 2851758 (D.R.I. Oct. 8, 2025). Avoidance of summary judgment "requires hard evidence of a material factual dispute; the opposition cannot be conjectural or problematic [but] must have substance." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (internal quotation marks omitted). During the summary judgment phase, the court should not rely on credibility assessments; "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (internal quotation marks omitted).

The same standard of review applies when reviewing cross-motions for summary judgment. That is, the Court must "consider each motion separately, drawing all inferences in favor of each non-moving party in turn." Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (internal quotation marks omitted).

## III.    APPLICABLE LAW

When interpreting an insurance policy, Rhode Island courts apply general principles of contract law. Town of Cumberland v. Rhode Island lnterlocal Risk Mgmt. Tr., Inc., 860 A.2d 1210, 1215 (R.I. 2004). The Court examines the four corners of the policy and construes the

8

policy as a whole, giving its terms their plain, ordinary, and usual meaning.  Id.  The proper inquiry is not what the insurer intended but what an ordinary reader and purchaser of insurance would have understood the policy language to mean.  Id.  Where policy language is unambiguous, it must be enforced according to its plain meaning.  See Aetna Cas. & Sur. Co. v. Sullivan, 633 A.2d 684, 686 (R.I. 1993).  If a policy provision is ambiguous or reasonably susceptible to more than one interpretation, it is construed strictly against the insurer and in favor of the insured.  Id.  In accordance with settled Rhode Island law, courts cannot read nonexistent terms or limitations into an insurance contract.  Papudesu v. Med. Malpractice Joint Underwriting Ass'n of Rhode Island, 18 A.3d 495, 499 (R.I. 2011).

The Rhode Island Supreme Court has emphasized that the requirement that homeowner insurance policies contain appraisal clauses must be interpreted so as to promote the "speedy and efficient resolution of claims" and to avoid unnecessary litigation.  Hahn v. Allstate Ins. Co., 15 A.3d 1026, 1030 (R.I. 2011) (emphasis added); see Machado, 252 A.3d at 1209 n.4.  Consistently, under Rhode Island law, the homeowner's insurance contract imposes on the insured the implied duty "to proceed reasonably and in good faith toward the completion of the contemplated performance" with respect to the contractual right to demand appraisal.  Machado, 252 A.3d at 1210 (internal quotation marks omitted).  Thus, in Machado, the Rhode Island Supreme Court addressed a claim under a Rhode Island insurance policy for an appraisal demanded by the insureds after a delay of twenty months following their acceptance of payment from the insurer.  Machado, 252 A.3d at 1208.  Stepping past whether there was a factual dispute regarding an agreement between the parties pertaining to the amount of the loss, the Superior Court had found that the insurer properly rejected the insureds' demand for appraisal as untimely and granted summary judgment in favor of the insurer.  Id. at 1209.  The Rhode Island Supreme

9

Court affirmed, holding that the insureds' twenty-month delay following acceptance of the payment was unreasonable as a matter of law and in breach of the implied duty to proceed in good faith to completion of the contemplated performance – "the plain, blunt fact is that [the insureds] chose to wait between one and two years to communicate their concerns to [the insurer]." Id. at 1210.  The court held that the insureds' breach relieved the insurer of its responsibilities under the policy to proceed to appraisal.  Id.

Under applicable law, based on the Assignment, NEPSG has "the same rights under the [insurance] [p]olicy to pursue recovery for the [c]laim as the [p]olicyholders did prior to assignment."  New England Property Services Group, LLC v. USAA Cas. Ins. Co., No. PC-2023-00130, 2023 WL 4991996, at *5 (R.I. Super. Ct. July 28, 2023).

## IV.     ANALYSIS

This analysis is focused on the two independent reasons why NEPSG's demand for appraisal is doomed.

### A.     Lack of "Fail[ure] to Agree"

First, NEPSG's claim fails because the undisputed material facts clearly establish that, pursuant to the unambiguous terms of the Insurance Policy, the prerequisite to appraisal – "fail[ure] [of the insured and insurer] to agree on the amount of loss" – is missing in that the Resnicks and Selective undisputedly agreed on the amount of the loss and Selective paid the claim pursuant to the terms of their agreement.  ECF 20-2 at 22.  There simply is no "fail[ure] to agree."  Id.  That is, the Resnicks presented their signed Statement of the amount of the loss with which Selective agreed and promptly paid; as the Ceceri Declaration specifically admits, Selective's email indicating its agreement is "Selective's valuation and settlement position concerning the amount of the loss for the claim."  ECF No. 20 ¶ 8.  Thus, as Selective correctly

asserts, "[t]he appraisal provision of the [Insurance] Policy [was] not triggered." ECF No. 23-1 at 4. Based on this factually undisputed agreement, Selective's motion for summary judgment must be granted and NEPSG's must be denied.

NEPSG tosses up a hodge-podge of meritless arguments to evade this conclusion – all may be quickly set aside. For example, NEPSG contends that Selective's pivotal communication – "we have agreed" – is inadmissible hearsay, ignoring that it not only is supported as a business record by the Declaration of a Selective Property Claims Specialist, ECF No. 10 ¶ 9, but also that NEPSG has admitted that this communication constitutes an authentic copy of "Selective's valuation and settlement position concerning the amount of the loss for the claim." ECF No. 20 ¶¶ 8-9. Even more illogical is NEPSG's contention that the Court should ignore the fact that Selective agreed to the Resnicks' Statement of Loss because it is really a legal conclusion. Similarly, the Court is not persuaded by NEPSG's argument that Selective's initial letter dated December 11, 2018, to the Resnicks stating a proposed "Actual Cash Value Settlement," which the Resnicks rejected, somehow[7] summarized the policy inaccurately, which in some way rendered the Resnicks incapable (despite the assistance of a public insurance adjuster) from subsequently agreeing to anything. Nor does the Court find compelling NEPSG's contention that the Resnick's Statement of Loss, standing alone, did not become an agreement until the insurer accepted it; this argument founders on the undisputed agreement by Selective with the Resnicks' Statement of Loss, which it emailed just one day later.

---

[7] The Court is unable to discern, nor does NEPSG explain, how this letter (containing a proposal rejected by the Resnicks) fails accurately to summarize the terms of the Insurance Policy and how such failure conceivably tainted the Resnicks' subsequent determination of the loss, with which Selective agreed. The Court notes that the undisputed record also establishes that the email in which Selective states, "we have agreed," accurately quotes the operative language of the Insurance Policy. ECF No. 10-2.

11

If it accepts the foregoing analysis, the Court need not consider whether to disregard Mr. Ceceri's troubling and conclusory averment in his Declaration – that "[a]fter viewing the Property[8] and Selective's valuation of the loss, NEPSG determined that there was a genuine disagreement concerning the amount of loss." ECF No. 20 ¶ 10. That is, if the Court accepts as true that Mr. Ceceri somehow was able to reach such a conclusion based on an observation made well more than seven years after the wind/water damage occurred and more than five years after the damage was repaired, the Insurance Policy is clear that, having agreed, these insureds (and therefore their assignee, NEPSG) cannot contractually compel Selective to submit to arbitration.

### B.      Breach of Duty to Timely Proceed to Demand Appraisal

The other reason why NEPSG's appraisal demand was appropriately rejected is that it was untimely, in clear breach of the insureds' (and therefore NEPSG's) implied duty to proceed in good faith to completion of the contemplated performance with respect to appraisal. Machado, 252 A.3d at 1210. That is, the "plain, blunt fact" of a delay of more than five and a half years from when the Resnicks cashed the final payment based on the agreed-upon amount of loss (a delay that is more than double the twenty-month delay that the Rhode Island Supreme Court condemned in Machado) is palpably unreasonable and, as a matter of law, relieves Selective of any duty it might have to proceed with an appraisal. Machado, 252 A.3d at 1210; see Hahn, 15 A.3d at 1030 (appraisal process is "to ensure speedy and efficient resolution of claims").

---

[8] In his declaration, Mr. Ceceri does not say when the "Property" was viewed or by whom. Nor does he explain how the conditions of the "Property" seen in 2025 conceivably have a bearing on the value of a loss incurred more than seven years prior and subsequently repaired. In the Petition, NEPSG alleges that Mr. Ceceri inspected the "Subject Premises" on February 22, 2025, the same day that the Resnicks signed the Assignment; that allegation is not sworn. ECF No. 1-2 ¶ 12.

12

NEPSG's tries to counter the force of Machado's imposition of the duty to proceed in good faith to completion of the contemplated performance by timely demand for appraisal with its argument that Machado is distinguishable because the decision quotes a letter referencing a provision of the Machado insurance policy that (pursuant to the letter) required the insureds to make a replacement cost claim within 180 days from the date of loss.  Machado, 252 A.3d at 1210.  NEPSG contends that the Resnicks opted for replacement value and did not invoke their right to make a cash-value claim so the 180-day provision is not relevant in this case.  This argument fails because, far from being irrelevant in this case, Selective specifically quoted the 180-day provision in its January 17, 2019, communication to the Resnicks.  ECF No. 20-3 at 4. More importantly, the argument fails because the gravamen of Machado is not based on the 180-day provision as a specific contractual time limit, but rather rests on the holding that Rhode Island insurance contracts include an implied duty to proceed in good faith to completion of the contemplated performance affecting the right to demand appraisal, which duty was breached as a matter of law by a twenty-month delay following payment of what the insurer proffered as the total estimated replacement cost.  Id. at 1209-10.  Nor does the Court find persuasive NEPSG's contention that the Rhode Island Supreme Court's subsequent decision in Romeo v. Allstate Prop. & Cas. Ins. Co., 292 A.3d 1190 (R.I. 2023) alters the force of Machado's holding that insurance contracts impose the implied duty on insureds to act timely when demanding appraisal. Romeo simply holds that the initial demand for appraisal was contractually timely; its short-hand reference to the insurer's reliance on Machado being misplaced is to distinguish cases with untimely actions by insureds, in contrast to the timeliness of the appraisal demand in Romeo. Romeo, 292 A.2d at 1196-97.  Romeo does not overrule Machado's core holding that the insured must "proceed reasonably and in good faith toward the completion of the contemplated

13

performance" in exercising the right to demand appraisal.  Machado, 252 A.3d at 1210 (internal quotation marks omitted).

At bottom, NEPSG's contention that its demand for appraisal was timely rests on its theory that an insured may renege on an agreement regarding the amount of loss after payment, as long as the disagreement is asserted any time over the next ten years, that is, until barred by the applicable statute of limitation for suits based on breach of contract, R.I. Gen. Laws § 9-1-13(a).  The Court must soundly reject this argument not only because it clashes dramatically with the Rhode Island Supreme Court's holdings in Machado and Hahn, but also because a provision permitting the insureds to reneg on an agreement and demand appraisal with no time limit except for the applicable statute of limitation is missing from the Insurance Policy.  See Papudesu, 18 A.3d at 499 (court cannot read term into insurance contracts that is not there).  In this case, it is clear that, having undisputedly agreed to and accepted the payment of the loss amount and done nothing for more than five years, the Resnicks (and NEPSG as their assignee) have waived their right to appraisal because their five-year delay in demanding an appraisal is unreasonable as a matter of law and has materially prejudiced Selective.  See Machado, 252 A.3d at 1209-10.

C.      **Selective's License to Transact Insurance Business**

In its opposition brief, NEPSG relied for the first time on the troubling argument that Selective is in breach of the Rhode Island Business Corporation Act's requirement that foreign corporations must obtain a certificate of authority to transact business.  R.I. Gen. Laws § 7-1.2-1401.  Based on this argument, NEPSG asks the Court to bar Selective from relying on equitable defenses (such as the duty imposed by Machado) and to enjoin Selective from continuing to do business.  However, NEPSG failed to cite the correct statute, R.I. Gen. Laws § 27-2-11, which provides that the authority of a foreign insurance company like Selective to transact insurance

14

business in Rhode Island is derived from licensing by the Rhode Island Insurance Commissioner. Further, it is clear that NEPSG was aware of the disingenuousness of its argument, as NEPSG's own Petition alleges that Selective was "properly registered" to do business in Rhode Island.[9] ECF No. 1-2 ¶ 2.  Nor does NEPSG cite any law holding that a foreign insurance company that is properly licensed by the Rhode Island Insurance Commissioner must also register under the Business Corporation Act.  To the contrary, Rhode Island law appears clearly to establish that a foreign insurance company's compliance with the licensing requirements set by the Insurance Commissioner is sufficient.  See Tel. Credit Union of Rhode Island v. Fetela, 569 A.2d 1059, 1062 (R.I. 1990) (holding that language and purpose of licensing requirement imposed on foreign insurance company is analogous to requirements imposed on "general business corporations located outside the State of Rhode Island"); see Phoenix Ins. Co. v. Cincinnati Indem. Co., C.A. No. 16-223S, 2017 WL 3225924, at *2 (D.R.I. Mar. 3, 2017) (noting that foreign insurance company was appropriately authorized to transact insurance business in Rhode Island by reason of license pursuant to R.I. Gen. Laws § 27-2-11), adopted, 2017 WL 2983879 (D.R.I. July 13, 2017).  This conclusion is confirmed by the applicable Rhode Island regulations. See 230 R.I. Code R. § 20-55-1.2 (purpose of regulatory scheme is to assist Insurance Commissioner in determining whether a foreign insurance company is eligible for a license to transact insurance business as provided in R.I. Gen. Laws 27-2); 230 R.I. Code R. § 20-55-1.3 (to be considered for license in Rhode Island, foreign insurance company must file "Uniform Certificate of Authority Application" which is subject to a "rigorous financial and operational review"); 230 R.I. Code R. § 20-55-1.5 (noting required submissions for "[f]oreign insurance

---

[9] NESPG is legally bound by this admission.  See Amgen Inc. v. Conn. Ret. Plan and Tr. Funds, 568 U.S. 455, 470 n.6 (2013) ("[f]actual assertions in pleadings . . . unless amended, are considered judicial admissions conclusively binding on the party who made them") (internal quotation marks omitted).

companies seeking a Rhode Island Certificate of Authority"); 230 R.I. Code R. § 20-45-2.3 (defining "license" as any license, <u>certificate of authority</u> . . . or other formal approval <u>granted or issued by the Department of Business Regulation, Division of Insurance</u>, allowing an insurer to transact the business of insurance in Rhode Island") (emphasis added).

I recommend that the Court disregard this frivolous argument.

## V.     CONCLUSION

Based on the foregoing, I recommend that Selective's motion for summary judgment (ECF No. 23) be GRANTED and that NEPSG's motion for summary judgment (ECF No. 19) be DENIED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  <u>See</u> <u>Brenner v. Williams-Sonoma, Inc.</u>, 867 F.3d 294, 297 n.7 (1st Cir. 2017); <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 12, 2026

16